# EXHIBIT D

HAILYN J. CHEN (State Bar No. 237436)
hailyn.chen@mto.com
JOHN B. MAJOR (State Bar No. 306416)
john.major@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California  90071-3426
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

SONYA U. SANCHEZ (State Bar No. 247541)
sonya.sanchez@ucop.edu
University of California
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, CA  94607-5200
Telephone:     (510) 987-9800
Facsimile:     (510) 987-9757

Attorneys for Defendants
JOHN ROE and JANE ROE

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

| | |
|---|---|
| JOHN DOE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN ROE, an individual; JANE ROE, an individual; and DOES 1 through 20,<br><br>Defendants. | Case No. 30-2018-00968408-CU-NP-CJC<br><br>**DEFENDANTS JOHN ROE'S AND JANE ROE'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PURSUANT TO C.C.P. § 425.16; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with Declaration of Kirsten Quanbeck, Request for Judicial Notice, and Proposed Order]<br><br>Judge:    Hon. Glenn R. Salter<br>Dept.:    C22<br>Hearing Date:    May 3, 2018<br>Hearing Time:    1:30 p.m.<br><br>Action Filed:    January 22, 2018<br>Trial Date:    None Set |

DEFENDANTS' SPECIAL MOTION TO STRIKE

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 3, 2018, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Department C22 of the above-captioned Court, located at 700 W. Civic Center Dr., Santa Ana, CA 92701, Defendants John Roe and Jane Roe will and hereby do move the Court for an order striking Plaintiff John Doe's malicious prosecution and abuse of process claims on the following ground:  Plaintiff's malicious prosecution and abuse of process claims arise from protected activity under California's anti-SLAPP statute, Code of Civil Procedure section 425.16, and Plaintiff's claims have no probability of success because (i) Plaintiff's abuse of process claim is barred by Civil Code Section 47(b); (ii) Plaintiff's malicious prosecution claim is barred because Plaintiff cannot establish that the proceeding underlying his malicious prosecution ended in a "favorable termination"; (iii) Plaintiff's malicious prosecution claim is barred because Plaintiff cannot show that Defendants initiated any proceedings against him; (iv) both of Plaintiff's claims are barred because Plaintiff has not exhausted his administrative remedies; (v) both of Plaintiff's claims are barred because Plaintiff has not exhausted his judicial remedies; and (vi) both of Plaintiff's claims are barred as to Defendant John Roe by governmental immunity, pursuant to Government Code Sections 821.6 and 820.2.

Plaintiff's claims arise from Defendants John Roe's and Jane Roe's decision to report Plaintiff's misconduct—which involved stalking Jane Roe and tampering with her lab experiments—to the University of California, Irvine (the "University").  The statements made by Defendants in reporting Plaintiff's misconduct were made in furtherance of Defendants' rights protected by California's anti-SLAPP statute because Defendants' statements were made before and in connection with an "official proceeding" authorized by law—Plaintiff's University misconduct proceedings.  (See Code Civ. Proc., § 425.16, subd. (e).)  The statements are therefore subject to California's anti-SLAPP statute, Code of Civil Procedure Section 425.16.  Further, Plaintiff's claims based on those statements have no probability of success, for the reasons mentioned above.  Accordingly, both of the claims in Plaintiff's Complaint should be stricken pursuant to Section 425.16, and the Complaint should be dismissed with prejudice.

30-2018-00968408-CU-NP-CJC

1        This Motion is based upon this Notice of Motion, the accompanying Memorandum of

2  Points and Authorities, the Declaration of Kirsten Quanbeck and attached exhibits, the Request for

3  Judicial Notice filed concurrently herewith, the papers, records and pleadings on file herein, and

4  upon any additional argument or evidence permitted by this Court at the hearing on this Motion.

5

6  DATED:  March 27, 2018               MUNGER, TOLLES & OLSON LLP

                                           HAILYN J. CHEN

7                                 JOHN B. MAJOR

8

9                       By:

10                        JOHN B. MAJOR

                         Attorneys for Defendants John Roe and Jane Roe

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 8

I.     INTRODUCTION ........................................................................................... 8

II.    BACKGROUND ............................................................................................ 11

III.   ARGUMENT .................................................................................................. 12

     A.     Plaintiff's Claims Arise from Acts in Connection with Official Proceedings ........ 13

     B.     Plaintiff Cannot Demonstrate a Probability of Success on the Merits ................... 15

          1.     Plaintiff's Abuse of Process Claim Is Barred by Section 47(b) .................. 15

          2.     Plaintiff's Malicious Prosecution Claim Is Barred Because the Underlying Proceeding Has Not Ended in a "Favorable Termination" ................................................................................. 16

          3.     Plaintiff's Malicious Prosecution Claim Is Barred Because the University, Not Defendants, Initiated Proceedings Against Plaintiff ........ 17

          4.     Plaintiff Has Failed to Administratively Exhaust His Remedies ............... 19

          5.     Plaintiff Has Failed to Judicially Exhaust His Remedies ........................... 20

          6.     Plaintiff's Claims Against Defendant John Roe Are Barred by Governmental Immunity ........................................................................ 21

              (a)     Defendant John Roe Is Protected by Section 821.6 Immunity ........ 21

              (b)     Defendant John Roe Is Protected by Section 820.2 Immunity ........ 22

IV.    CONCLUSION ............................................................................................... 22

# TABLE OF AUTHORITIES

**CASES**

*Abelleira v. Dist. Ct. of Appeal, Third. Dist.*
  (1941) 17 Cal.2d 280.................................................................................................19

*Asgari v. City of L.A.*
  (1997) 15 Cal.4th 744................................................................................................21

*Booker v. Rountree*
  (2007) 155 Cal.App.4th 1366...............................................................................9, 13

*Campbell v. Regents of Univ. of Cal.*
  (2005) 35 Cal.4th 311................................................................................................19

*Cantu v. Res. Trust Corp.*
  (1992) 4 Cal.App.4th 857..........................................................................................17

*Chavez v. Mendoza*
  (2001) 94 Cal.App.4th 1083......................................................................................14

*Comstock v. Aber*
  (2012) 212 Cal.App.4th 931......................................................................................13

*Cruey v. Gannett Co.*
  (1998) 64 Cal.App.4th 356..................................................................................15, 16

*Daniels v. Robbins*
  (2010) 182 Cal.App.4th 204..........................................................................9, 13, 17

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*
  (1996) 47 Cal.App.4th 777........................................................................................13

*Drasin v. Jacoby & Meyers*
  (1984) 150 Cal.App.3d 481..................................................................................11, 16

*Edgren v. Regents of Univ. of Cal.*
  (1984) 158 Cal.App.3d 515........................................................................................19

*English v. City of Long Beach*
  (1950) 35 Cal.2d 155.................................................................................................20

*Ferreira v. Gray, Cary, Ware & Freidenrich*
  (2001) 87 Cal.App.4th 409........................................................................................16

*Gallianis-Politis v. Medina*
  (2007) 152 Cal.App.4th 600......................................................................................12

30-2018-00968408-CU-NP-CJC

1

## TABLE OF AUTHORITIES

2   *Gupta v. Stanford Univ.*
3       (2004) 124 Cal.App.4th 407.................................................................................20

3   *Hagberg v. Cal. Fed. Bank FSB*
4       (2004) 32 Cal.4th 350.....................................................................................15

5   *Hansen v. Cal. Dept. of Corrections & Rehabilitation*
        (2008) 171 Cal.App.4th 1537........................................................................14, 21
6

7   *Hardy v. Vial*
        (1957) 48 Cal.2d 577......................................................................................22
8

    *Hogen v. Valley Hospital*
9       (1983) 147 Cal.App.3d 119.............................................................................18

10  *Imig v. Farrar*
        (1977) 70 Cal.App.3d 48................................................................................15
11

12  *Johnson v. Super. Ct.*
        (1994) 25 Cal.App.4th 1564............................................................................18
13

14  *Kemmerer v. County of Fresno*
        (1988) 200 Cal.App.3d 1426...........................................................................22
15

    *Kumar v. Nat. Medical Enterprises, Inc.*
16      (1990) 218 Cal.App.3d 1050...........................................................................20

17  *Lockwood v. Sheppard, Mullin, Richter & Hampton, LLP*
        (C.D. Cal. Nov. 24, 2009, No. CV 09-5157-JFW (AGRx)) 2009 WL 9419499 .......................18
18

19  *Pollock v. Univ. of So. Cal.*
        (2003) 112 Cal.App.4th 1416..........................................................................15
20

    *Pomona College v. Super. Ct.*
21      (1996), 45 Cal.App.4th 1716...........................................................................19

22  *Risam v. County of L.A.*
        (2002) 99 Cal.App.4th 412..............................................................................20
23

24  *Ross v. S.F. Bay Area Rapid Transit Dist.*
        (2007) 146 Cal.App.4th 1507..........................................................................22
25

    *Tur v. City of L.A.*
26      (1996) 51 Cal.App.4th 897..............................................................................21

27  *Un Hui Nam v. Regents of the Univ. of Cal.*
        (2016) 1 Cal.App.5th 1176..............................................................................14

28

1

## TABLE OF AUTHORITIES

*Vergos v. McNeal*
    (2007) 146 Cal.App.4th 1387 ............................................................................................ 14, 15

*Weiner v. Mitchell, Silberberg & Knupp*
    (1980) 114 Cal.App.3d 39 ........................................................................................................ 11

*Werner v. Hearst Publications, Inc.*
    (1944) 65 Cal.App.2d 667 ........................................................................................................ 19

*Westlake Community Hospital v. Super. Ct.*
    (1976) 17 Cal.3d 465 ................................................................................................................ 20

STATUTES

Civ. Code, § 47(b) ............................................................................................................ 9, 15, 16

Code Civ. Proc., § 425.16 .......................................................................................... passim

Gov. Code, § 820.2 ................................................................................................................ 10, 22

Gov. Code, § 821.6 ............................................................................................................ 10, 21, 22

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' SPECIAL MOTION TO STRIKE

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff John Doe's Complaint seeks to hold Defendants John Roe and Jane Roe liable for reporting him to the University of California, Irvine (the "University") for stalking Jane Roe and tampering with research she conducted in a laboratory run by John Roe, a University professor. Defendants reported Plaintiff's conduct to both University police and University administrators in early 2016.  In response, the University initiated student disciplinary proceedings against Plaintiff.

Plaintiff then challenged the outcome of those proceedings in this court by petitioning for a writ of mandate, arguing that procedural errors rendered those proceedings unfair.  In response, the University acknowledged that it made certain procedural errors during the course of Plaintiff's administrative proceedings, by, for example, failing to disclose certain witness names to Plaintiff during those proceedings.  Accordingly, rather than litigate Plaintiff's writ matter, the University confessed judgment[1] and agreed to remand the matter for revised administrative proceedings. Those proceedings remain ongoing, and the University remains committed—as it must, pursuant to its obligations under Title IX, the Violence Against Women Act, and its own policies—to pursuing the stalking and research misconduct charges that it originally brought against Plaintiff.

Plaintiff has now brought suit against Defendants John Roe and Jane Roe for their role in his disciplinary proceedings.  He claims that by reporting his misconduct to University authorities, Defendants are responsible for the University's decision to initiate misconduct proceedings against him.  He brings two claims—malicious prosecution and abuse of process.  Both claims are subject to dismissal pursuant to California's anti-SLAPP statute, Code of Civil Procedure Section 425.16.

As an initial matter, both of Plaintiff's claims plainly arise from conduct protected by the anti-SLAPP statute.  Courts have observed that "[t]he plain language of the anti-SLAPP statute dictates that every claim of malicious prosecution is a cause of action arising from protected

---

[1]  The University initially asked Plaintiff to enter an agreement by which the University would agree to remand proceedings to provide Plaintiff with a revised hearing, but Plaintiff refused to enter into such an agreement.  Nonetheless, the University was determined to provide Plaintiff with a new hearing, so it filed a "confession of judgment" to get proceedings remanded.

activity because every such claim necessarily depends upon written and oral statements in a prior [official] proceeding." (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 215.) For similar reasons, courts have observed that "it is hard to imagine an abuse of process claim that would not fall under the protection of the [anti-SLAPP] statute." (*Booker v. Rountree* (2007) 155 Cal.App.4th 1366, 1370.) Plaintiff's claims are no exception. They are based on exactly the sort of conduct that the anti-SLAPP statute was designed to protect—statements by Defendants in connection with Plaintiff's official misconduct proceedings. (See Code Civ. Proc., § 425.16, subd. (e).)

Because the anti-SLAPP statute applies, the burden shifts to Plaintiff to establish "a probability that [he] will prevail on [his] claim[s]." (*Id.* § 425.16, subd. (b)(1).) Plaintiff cannot meet that burden, because his claims are barred by a number of doctrines that (i) protect the individuals from lawsuits based on their participation in administrative proceedings; and (ii) require a plaintiff to see his administrative proceedings through to completion before bringing tort claims based on those proceedings.[2] For the following reasons, Plaintiff cannot prevail on his claims:

**First, Plaintiff's abuse of process claim is barred by the litigation privilege codified by California Civil Code Section 47(b).** Section 47(b) states that individuals cannot be held liable for communications made "in the initiation or course of any other proceeding authorized by law and reviewable [by mandate]." Section 47(b) bars all tort claims other than malicious prosecution. Plaintiff's abuse of process claim is therefore barred.

**Second, Plaintiff's malicious prosecution claim fails because his administrative proceedings have not come to a "favorable termination."** As mentioned above, Plaintiff's administrative proceedings have not terminated at all—they are ongoing at the administrative level following remand. His malicious prosecution claim is therefore premature.

---

[2] For the same reasons, Plaintiff's Complaint is subject to dismissal. Defendants plan to file a demurrer seeking dismissal of Plaintiff's Complaint, which will make similar arguments to those in this Motion. If the Court grants this Motion, it need not address Defendants' demurrer.

DEFENDANTS' SPECIAL MOTION TO STRIKE

1    **Third, Plaintiff's malicious prosecution claim fails because the proceedings against**

2    **him were not initiated by Defendants.** Rather, they were initiated by the University, following

3    its independent assessment of the misconduct reported by Defendants. In that situation, courts

4    have made clear that the proper defendant for a malicious prosecution claim is the administrative

5    body, *not* the party that reported misconduct. Thus, Plaintiff has sued the wrong party.

6    **Fourth, Plaintiff's claims are also premature because he has not exhausted his**

7    **administrative or judicial remedies.** As mentioned, the University has reinitiated administrative

8    proceedings against Plaintiff. Before bringing claims based on those proceedings, Plaintiff must

9    first allow the administrative proceedings to run their course (thereby exhausting administrative

10   remedies) and then challenge the result of those proceedings by writ of administrative mandate

11   (thereby exhausting his judicial remedies). Plaintiff has done neither in this case.

12   **Fifth, Plaintiff's claims against Defendant John Roe are barred by two types of**

13   **governmental immunity—Government Code Sections 821.6 and 820.2.** Sections 821.6 and

14   820.2 protect government employees from claims based on (i) their role in initiating

15   administrative proceedings and (ii) their discretionary decisions made in the course of their duties.

16   But both of Plaintiff's claims against Defendant John Roe are based on conduct that falls into

17   those two categories. Accordingly, Defendant John Roe is immune from Plaintiff's claims.

18   In short, Plaintiff's claims are based entirely on statements Defendants made in connection

19   with official University misconduct proceedings—exactly the sort of statements the anti-SLAPP

20   statute protects—and his claims have no possibility of success on the merits. Accordingly, for the

21   reasons set forth in this Motion, Defendants respectfully request that the Court strike Plaintiff's

22   malicious prosecution and abuse of process claims pursuant to Code of Civil Procedure Section

23   425.16 and dismiss Plaintiff's Complaint with prejudice.[3]

24

25

26   _____

27   [3] Pursuant to Code of Civil Procedure Sections 425.16(c)(1) and 3344, Defendants also request
     that the Court award them attorneys' fees and costs associated with this Motion.

28

## II.    **BACKGROUND**

Plaintiff's Complaint centers on disciplinary proceedings that were brought against him by the University of California, Irvine (the "University"). (Complaint ¶ 10.) Plaintiff is a former student at the University who worked in a University research laboratory. (*Id.* ¶ 1.) Defendant John Roe is an assistant professor at the University who is responsible for a different University research laboratory. (*Id.* ¶ 3.) Defendant Jane Roe was a graduate student at the University that worked in Defendant John Roe's laboratory. (*Id.* ¶ 2.)

In February 2016, Defendants reported to the University that Plaintiff "had been stalking Jane Roe for the previous four years, including hacking her computer and social media accounts, and more recently had sabotaged her lab work." (*Id.* ¶ 7.) As the University's ensuing investigation revealed, Defendants' allegations were supported. (Decl. of Kirsten Quanbeck ("Quanbeck Decl.") ¶ 9.) Upon learning of the allegations, University policies required the University to conduct a "preliminary assessment of the facts" and to "determine[] [whether] to conduct a Formal Investigation." (*Id.* Exh. A at 9.)[4] University policy makes clear that University officials have "final authority for determining whether to initiate a Formal Investigation." (*Id.* Exh. A at 8.) The University's adjudication model similarly states that upon receipt of a report of misconduct, University officials "will determine, consistent with [University policy], whether an investigation should be initiated." (*Id.* Exh. B at 4.) The University followed those policies here. After Defendants reported Plaintiff's misconduct, the University interviewed Defendant Jane Roe a number of times, evaluated whether the allegations presented a possible violation of University policies, and decided that a formal investigation was warranted. (*Id.* ¶¶ 6, 8.)

The University initiated a formal investigation of the allegations against Plaintiff in March 2016. (Complaint ¶¶ 8-10; see also Quanbeck Decl. Exh. E.) The University then conducted an investigation into Plaintiff's conduct. (Complaint ¶¶ 10-11; see also Quanbeck Decl. ¶ 9.) That

---

[4] As explained more fully in the Request for Judicial Notice filed concurrently herewith, the court "may take judicial notice of the file in the" action underlying Plaintiff's malicious prosecution claim. (*Drasin v. Jacoby & Meyers* (1984) 150 Cal.App.3d 481, 484; see also *Weiner v. Mitchell, Silberberg & Knupp* (1980) 114 Cal.App.3d 39, 46-47 [similar].)

1  investigation involved interviews of over 40 witnesses and 113 exhibits.  (See Complaint ¶¶ 18-

2  19; see also Quanbeck Decl. ¶ 9.)  Following the investigation, a hearing, and an appeal, the

3  University found that Plaintiff had violated University policies.  (Complaint ¶¶ 20-26.)

4        Plaintiff challenged the University's decision by writ of mandate.  (*Id.* ¶ 27.)  Plaintiff's

5  Petition for Writ of Mandate focused on alleged procedural errors made by the University in

6  conducting Plaintiff's administrative proceedings.  (Request for Judicial Notice ("RJN") Exh. A,

7  at 41.)  In response, the University acknowledged that it made certain procedural errors during

8  Plaintiff's administrative proceedings, and accordingly, agreed to confess judgment in the writ

9  proceeding and "reconsider its decision" against Plaintiff.  (RJN Exh. B.)  The confession of

10  judgment specifically noted that "nothing in this Confession of Judgment . . . shall limit or control

11  in any way the discretion legally vested in the University."  (*Id.*)  Following issuance of the

12  judgment and the writ, the University reinitiated disciplinary proceedings against Plaintiff

13  addressing procedural errors raised in Plaintiff's writ proceeding.  (Quanbeck Decl. Exh. G.)  The

14  University has indicated that it intends to reinvestigate the charges against Plaintiff and provide

15  Plaintiff with a new hearing addressing some of the concerns raised during his writ proceedings.

16  (*Id.*)  Plaintiff's renewed administrative proceedings are ongoing.  (*Id.*)

17  **III.    ARGUMENT**

18        California's anti-SLAPP statute provides that a "cause of action against a person arising

19  from any act of that person in furtherance of the person's right of petition or free speech … shall

20  be subject to a special motion to strike, unless the court determines … there is a probability that

21  the plaintiff will prevail on the claim."  (Code Civ. Proc., § 425.16, subd. (b)(1).)  A strategic

22  lawsuit against public participation, or "SLAPP," "'seeks to chill or punish a party's exercise of

23  constitutional rights to free speech and to petition the government to for redress of grievances.'"

24  (*Gallianis-Politis v. Medina* (2007) 152 Cal.App.4th 600, 609.)  The anti-SLAPP statute protects

25  against such lawsuits by providing "'a procedural remedy to dispose of lawsuits that are brought to

26  chill the valid exercise of constitutional rights."  (*Ibid.*)  The constitutional rights protected by the

27  statute include the "'right to petition,"' which encompasses "'the basic act of filing litigation or

28

otherwise seeking administrative action.'"  (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784.)

"'A two-step process is used for determining whether an action is a SLAPP.'"  (*Comstock v. Aber* (2012) 212 Cal.App.4th 931, 940.)  "First, the court decides whether the defendant . . . has made a threshold showing that the challenged cause of action is one arising from protected activity."  (*Ibid.*)  If the defendant makes that showing, the burden shifts to the plaintiff to "demonstrate[] a probability of prevailing on the claim."  (*Ibid.*)

### A.    <u>Plaintiff's Claims Arise from Acts in Connection with Official Proceedings</u>

The first step in the anti-SLAPP analysis is determining whether Plaintiff's "cause[s] of action . . . aris[e] from any act of [Defendants] in furtherance of [Defendants'] right of petition or free speech."  (Code Civ. Proc., § 425.16, subd. (b)(1).)  That is the case when a claim arises from "any written or oral statement or writing made in connection with an issue under consideration or review by . . . any . . . official proceeding authorized by law."  (*Id.* § 425.16, subd. (e).)

Courts have observed that malicious prosecution and abuse of process claims almost always arise from statements made in connection with official proceedings.  As to malicious prosecution claims, courts have held that "[t]he plain language of the anti-SLAPP statute dictates that every claim of malicious prosecution is a cause of action arising from protected activity because every such claim necessarily depends upon written and oral statements in a prior [official] proceeding."  (*Daniels*, *supra*, 182 Cal.App.4th at p. 215.)  Similarly, as to abuse of process claims, courts have observed "it is hard to imagine an abuse of process claim that would not fall under the protection of the statute" because such claims are necessarily based on "some misuse of process in a prior action."  (*Booker*, *supra*, 155 Cal.App.4th at p. 1370.)

That is exactly the case here.  Plaintiff's claims seek to punish Defendants for protected activity taken in connection with an official proceeding—their reporting of Plaintiff's misconduct to the University and participation in his ensuing misconduct proceedings.  But such claims are necessarily based on "written or oral statement[s] or writing[s] made in connection with an issue under consideration or review by . . . [an] official proceeding authorized by law."  (Code Civ.

DEFENDANTS' SPECIAL MOTION TO STRIKE

Proc., § 425.16, subd. (e).)  Courts have made clear that an "official proceeding" includes "[t]he entire disciplinary process, commencing with the receipt of complaints . . . and proceeding through the investigation and disposition.'"  (*Un Hui Nam v. Regents of the Univ. of Cal.* (2016) 1 Cal.App.5th 1176, 1186; see also *Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1396 [University of California hearing procedures "qualify as official proceedings authorized by law"].)

Further, both of Plaintiff's claims clearly arise from statements made by Defendants in connection with the University's misconduct proceedings.  Plaintiff's Complaint makes that crystal clear in the very first paragraph, alleging that Defendants are liable because they "initiat[ed] and direct[ed] . . . a formal University of California Title IX disciplinary misconduct action against Plaintiff at UC, Irvine."  (Complaint, at p. 2.)  The Complaint also alleges that Defendants "reported to [University] police" that Plaintiff had committed misconduct.  (*Id.* ¶ 7.)  Then, in the context of the malicious prosecution claim, the Complaint claims Defendants are liable for "initiat[ing] a wrongful administrative proceeding against Plaintiff, based on their false allegations against him" and for "ma[king] these false reports to the UCI Title IX Office."  (*Id.* ¶¶ 32, 37.)  The abuse of process claim is similarly based on allegations that Defendants "ma[de] false allegations against Plaintiff" and thereby "initiat[ed] and maintain[ed] the Title IX investigation" against him.  (*Id.* ¶ 50.)  In short, because the Complaint seeks to impose liability on Defendants based on statements made in connection with an official proceeding, the first prong of the anti-SLAPP analysis is easily met.[5]

_____

[5] Plaintiff's allegation that Defendants' statements were false does not change this analysis.  As an initial matter, Defendants statements were not false, and the University's confession of judgment in the writ matter did not indicate otherwise.  The confession of judgment acknowledged that the University made certain procedural errors during Plaintiff's proceedings.  It did not reflect a lack of faith in Defendants' allegations against Plaintiff.  (See *supra* at 8 fn. 1.)  Moreover, the anti-SLAPP statute applies even if a plaintiff alleges that statements made during administrative proceedings were false.  (See *Hansen v. Cal. Dept. of Corrections & Rehabilitation* (2008) 171 Cal.App.4th 1537, 1545 ["[C]onduct that would otherwise be protected by the anti-SLAPP statute does not lose its coverage simply because it is *alleged* to have been" false.]; *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1089 [courts "must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis"].)

1

### B.    Plaintiff Cannot Demonstrate a Probability of Success on the Merits

2          Because Defendants have made a "threshold showing that" Plaintiff's claims "arise[] from

3  . . . conduct protected under section 425.16, the burden shifts to the plaintiff to show a probability

4  of prevailing on the merits at trial."  (*Vergos*, *supra*, 146 Cal.App.4th at p. 1400.)  Plaintiff cannot

5  make that showing, for the reasons discussed below.

6          **1.    Plaintiff's Abuse of Process Claim Is Barred by Section 47(b)**

7          Plaintiff cannot show a probability of success on his abuse of process claim because it is

8  barred by California Civil Code Section 47(b).  That provision bars liability based on

9  communications made "in the initiation or course of any other proceeding authorized by law and

10 reviewable [by mandate]."  (Civ. Code, § 47, subd. (b); see also *Cruey v. Gannett Co.* (1998) 64

11 Cal.App.4th 356, 368 [privilege "makes a communication absolutely privileged if made . . . in the

12 initiation or course of any other proceeding authorized by law and reviewable by mandate"].)  It

13 exists "to assure utmost freedom of communication between citizens and public authorities whose

14 responsibility is to investigate and remedy wrongdoing."  (*Imig v. Farrar* (1977) 70 Cal.App.3d

15 48, 55.)  In order to serve that purpose, courts have given Section 47(b) a broad scope—it provides

16 immunity not just for statements made during administrative proceedings, but also to statements

17 "intended to prompt an administrative agency . . . to investigate or remedy a wrongdoing."

18 (*Hagberg v. Cal. Fed. Bank FSB* (2004) 32 Cal.4th 350, 362-363; see also *Imig*, *supra*, 70

19 Cal.App.3d at p. 55 [holding that "'a communication to an official administrative agency, which

20 communication is designed to prompt action by that agency, is as much a part of the "official

21 proceeding" as a communication made after the proceedings have commenced'"].)  The privilege

22 created by Section 47(b) is an "'absolute' privilege, and it bars all tort causes of action except a

23 claim for malicious prosecution."  (*Hagberg*, *supra*, 32 Cal.4th at p. 360.)  Courts have explicitly

24 held that Section 47(b) bars a claim for abuse of process.  (*Pollock v. Univ. of So. Cal.* (2003) 112

25 Cal.App.4th 1416, 1429 ["The tort of abuse of process is barred by the litigation privilege."].)

26         Here, based on the allegations in the Complaint, Plaintiff's abuse of process claim is

27 plainly barred by the litigation privilege.  The abuse of process claim is based entirely on

28

statements that Defendants made during the lead-up to and course of Plaintiff's administrative proceedings.  For example, Plaintiff alleges that Defendants "initiat[ed] and maintain[ed] [a] Title IX investigation against Plaintiff."  (Complaint ¶ 50.)  Along similar lines, Plaintiff alleges that Defendant John Roe "reported" Plaintiff's misconduct "to [the police and University officials]."  (*Id.* ¶ 7.)  These are the exact sort of allegations that Section 47(b) bars.  They attempt to impose liability on Defendants for communications made "in the initiation or course of" a proceeding "authorized by law."  And there can be no dispute that the administrative proceedings below are the sort to which the privilege applies—they are authorized by law and reviewable by mandate, as the Complaint itself makes clear.  (See *id.* ¶¶ 10, 27; see also *Cruey*, *supra*, 64 Cal.App.4th at p. 368 [privilege applies to proceedings "reviewable by mandate"].)  Accordingly, Plaintiff cannot show a probability of success on the merits of his abuse of process claim.

>               **2.    Plaintiff's Malicious Prosecution Claim Is Barred Because the Underlying Proceeding Has Not Ended in a "Favorable Termination"**

Plaintiff also cannot show a probability of success on his malicious prosecution claim because he cannot establish a key predicate for his malicious prosecution claim—that the underlying proceedings have come to a "favorable termination."

"A plaintiff in a malicious prosecution action must plead and prove that the prior . . . proceeding of which he complains terminated in his favor."  (*Drasin*, *supra*, 150 Cal.App.3d at pp. 483-484.)  "Furthermore, the termination must reflect on the merits of the underlying action."  (*Ibid.*)  "This requirement is an essential element of the tort of malicious prosecution, and it is strictly enforced."  (*Ferreira v. Gray, Cary, Ware & Freidenrich* (2001) 87 Cal.App.4th 409, 412-413.)  Here, Plaintiff cannot show that the proceedings underlying his malicious prosecution claim have resulted in a favorable termination.  Plaintiff's claim is based on the allegedly wrongful initiation of the University's misconduct proceedings.  (*See* Complaint ¶ 32 [claiming that Defendants "initiated a wrongful administrative proceeding against Plaintiff"].)  But those proceedings have not yet come to an end.  Rather, following the University's confession of judgment in Plaintiff's writ matter, this matter was remanded to the University for further proceedings.  (Quanbeck Decl. ¶¶ 11-12.)  The University then reinitiated administrative

1  proceedings and plans to conduct a new hearing.  (*Id.* Exh. G.)  Accordingly, Plaintiff's

2  administrative proceedings have not come to any termination at all, much less a "favorable" one.

3       Plaintiff's Complaint implies that he has received a "favorable termination" because his

4  writ proceeding ended with a "confession of judgment" from the University.  (Complaint ¶¶ 45-

5  47.)  But that proceeding's conclusion is of no moment—Plaintiff is not challenging the writ

6  proceeding; he is challenging the administrative proceedings, so he must show a favorable

7  termination of *those* proceedings.  Beyond that, the "confession of judgment" cannot constitute a

8  favorable termination in any event.  "'The theory underlying the requirement of favorable

9  termination is that it tends to indicate the innocence of the accused.'"  (*Robbins*, *supra*, 52

10  Cal.App.4th at p. 893.)  Accordingly, for a termination to be viewed as "favorable," it "must

11  *reflect* on the merits of the underlying action" and "on [the plaintiff's] innocence of the alleged

12  wrongful conduct."  (*Ibid.*)  If a termination "reflect[s] on neither innocence of nor responsibility

13  for the alleged misconduct . . . the termination is not favorable in the sense it would support a

14  subsequent action for malicious prosecution."  (*Ibid.*; see also *Cantu v. Res. Trust Corp.* (1992) 4

15  Cal.App.4th 857, 883 [no favorable termination where termination "reflects ambiguously on the

16  merits of the action and leaves open the question of the defendant's guilt or innocence"].)

17       That is exactly the case here.  The confession of judgment did not absolve Plaintiff of

18  wrongdoing or declare his innocence in the underlying administrative proceedings.  Rather, the

19  confession of judgment says nothing about whether he is innocent (see RJN Exh. B), and indeed,

20  the University has reinstituted misconduct proceedings against Plaintiff at the administrative level

21  (see Quanbeck Decl. Exh. G).  Accordingly, the "confession of judgment" cannot serve as a

22  "favorable termination" sufficient to support a malicious prosecution claim.

### 3.    Plaintiff's Malicious Prosecution Claim Is Barred Because the University, Not Defendants, Initiated Proceedings Against Plaintiff

23
24       Plaintiff also cannot show a probability of success on his malicious prosecution claim

25  because he has sued the wrong defendants.  Plaintiff has sued Defendants John Roe and Jane Roe,

26  even though their only role in "initiating" any administrative proceedings was reporting his

27  conduct to University officials.  But courts have repeatedly made clear that when an administrative

28

body conducts "an independent investigation . . . before any charges [are] brought," the proper defendant for a malicious prosecution claim is the administrative body, not the reporting party.[6] (*Hogen v. Valley Hospital* (1983) 147 Cal.App.3d 119, 124; see also *Lockwood v. Sheppard, Mullin, Richter & Hampton, LLP* (C.D. Cal. Nov. 24, 2009, No. CV 09-5157-JFW (AGRx)) 2009 WL 9419499, at *8 ["A party may not sue for malicious prosecution where the proceeding at issue was initiated after an independent investigation of the defendant's charges by the responsible authorities."].) Put another way, "since it is the administrative body, and not the individual initiating the complaint, which actually files the disciplinary proceeding, a cause of action for malicious prosecution will not lie if the administrative body conducts an independent preliminary investigation prior to initiating disciplinary proceedings." (*Johnson v. Super. Ct.* (1994) 25 Cal.App.4th 1564, 1568.) This requirement imposes an "additional pleading burden upon the plaintiff in a malicious prosecution case based upon the favorable termination of an administrative proceeding," requiring the plaintiff to allege that the administrative proceeding was initiated without the agency conducting any preliminary investigation. (*Ibid.*)

Plaintiff does not and could not make that sort of allegation. As the University's policies state, the University is required to conduct a "preliminary assessment of the facts" in order to "determine[] [whether] to conduct a Formal Investigation," and University officials have "final authority for determining whether to initiate a Formal Investigation." (Quanbeck Decl. Exh. A at 8–9.) The University's policies also make clear that University officials, based on their own judgment and discretion, "will determine, consistent with [University policy], whether an investigation should be initiated." (*Id.* Exh. B at 4.) Courts have held that "[i]t is presumed that . . . public officers . . . regularly perform[] their duty" and there is a "presumption that . . . an investigation was made" where one is required by an administrative agency's policies. (*Werner v.*

---

[6] Of course, if Plaintiff *did* bring claims against the administrative body here (the University), those claims would also fail, because many of the defenses discussed in this Motion (as well as others protecting public entities from suit) would apply to any action against the University.

DEFENDANTS' SPECIAL MOTION TO STRIKE

1  *Hearst Publications, Inc.* (1944) 65 Cal.App.2d 667, 671.)  Plaintiff does not allege that

2  University policies were not followed here.

3       Further, the University *did* in fact follow its policies and independently evaluate

4  Defendants' reports of misconduct before initiating formal proceedings.  After Defendants

5  reported Plaintiff's misconduct, the University re-interviewed Defendant Jane Roe a number of

6  times regarding the allegations and also evaluated whether the Plaintiff had violated University

7  policies.  (Quanbeck Decl. ¶ 6.)  Then, as the Complaint itself makes clear, the University itself

8  "initiated a formal Title IX disciplinary action against [him]."  (Complaint ¶ 10.)  Plaintiff's

9  malicious prosecution claim therefore has no probability of success.

10           **4.**     **Plaintiff Has Failed to Administratively Exhaust His Remedies**

11       Plaintiff also cannot establish a probability of success on either claim because he has not

12  exhausted his administrative remedies.  The "rule of exhaustion of administrative remedies is well

13  established in California jurisprudence."  (*Campbell v. Regents of Univ. of Cal.* (2005) 35 Cal.4th

14  311, 321.)  "The rule has important benefits: (1) it serves the salutary function of mitigating

15  damages; (2) it recognizes the quasi-judicial tribunal's expertise; and (3) it promotes judicial

16  economy by unearthing the relevant evidence and by providing a record should there be a review

17  of the case."  (*Id.* at p. 322.)  In recognition of these benefits, "[t]he failure to exhaust

18  administrative remedies will bar actions for damages, including tort claims."  (*Edgren v. Regents*

19  *of Univ. of Cal.* (1984) 158 Cal.App.3d 515, 520.)

20       Here, Plaintiff has failed to exhaust his administrative remedies.  "In brief, the rule is that

21  where an administrative remedy is provided by statute, relief must be sought from the

22  administrative body and this remedy exhausted before the courts will act."  (*Abelleira v. Dist. Ct.*

23  *of Appeal, Third. Dist.* (1941) 17 Cal.2d 280, 292; *see also Pomona College v. Super. Ct.* (1996),

24  45 Cal.App.4th 1716, 1723 [applying rule to university misconduct proceedings].)  Put another

25  way, "[j]udicial intervention is premature until the administrative agency has rendered a *final*

26  *decision* on the merits."  (*Edgren*, *supra*, 158 Cal.App.3d at p. 520 [emphasis added, citation

27  omitted].)  That is exactly the case here.  As discussed above, Plaintiff's administrative proceeding

28

1    has not reached a final decision on the merits; rather, it has been remanded for further proceedings

2    following his writ challenge and remains ongoing.  (Quanbeck Decl. Exh. G.)

3        Plaintiff is required to exhaust his administrative remedies even though the University has

4    already conducted a hearing in this matter and is now conducting a second hearing.  The fact that

5    the University "has heard and decided the matter does not preclude another hearing . . . and the

6    [University] cannot be said to have exhausted its power to act until it has given [Plaintiff] a fair

7    hearing."  (*English v. City of Long Beach* (1950) 35 Cal.2d 155, 160.)  Put differently, where a

8    matter is "remand[ed] for further proceedings . . . the agency . . . did not fully exercise the

9    discretion legally vested in it" and a party has not yet fully exhausted its administrative remedies.

10   (*Kumar v. Nat. Medical Enterprises, Inc.* (1990) 218 Cal.App.3d 1050, 1056.)  Until Plaintiff's

11   ongoing administrative proceedings end, he cannot bring a tort action based on those proceedings.

12        **5.    Plaintiff Has Failed to Judicially Exhaust His Remedies**

13        Plaintiff's claims also have no probability of success because he has not yet exhausted his

14   judicial remedies.  "The doctrine of exhaustion of judicial remedies precludes an action that

15   challenges the result of a quasi-judicial proceeding unless the plaintiff first challenges the decision

16   though a petition for writ of mandamus."  (*Gupta v. Stanford Univ.* (2004) 124 Cal.App.4th 407,

17   411.)  Put another way, where a party's claims are "necessarily premised on an assertion that the

18   [agency's quasi-judicial decision] was itself erroneous and unjustified," those claims are

19   premature when the implicitly challenged decision has not been set aside.  (*Westlake Community*

20   *Hospital v. Super. Ct.* (1976) 17 Cal.3d 465, 484.)  Accordingly, before bringing tort claims

21   related to administrative proceedings, a plaintiff must allow those proceedings to conclude and

22   then, if adverse to the plaintiff, challenge the result of those proceedings by pursuing a mandamus

23   action.  (*Ibid.*)  Here, in light of that doctrine, Plaintiff's claims are premature.  Before bringing his

24   tort claims, Plaintiff must wait for his ongoing administrative proceedings to conclude and then, if

25   the outcome is against him, challenge the outcome by writ of mandamus.  Because Plaintiff has

26   failed to take that path, he has failed to exhaust his judicial remedies.  (See, e.g., *Risam v. County*

27   *of L.A.* (2002) 99 Cal.App.4th 412, 423 [holding that where administrative decision "was a

28

DEFENDANTS' SPECIAL MOTION TO STRIKE

mixture of victory and defeat," party must challenge that decision by administrative writ before pursuing separate claims].).

### 6. Plaintiff's Claims Against Defendant John Roe Are Barred by Governmental Immunity

Plaintiff's claims against Defendant John Roe have no probability of success for an additional reason—they are barred by governmental immunity.

#### (a) Defendant John Roe Is Protected by Section 821.6 Immunity

First, Defendant John Roe is protected by Government Code Section 821.6, which states that a "public employee is not liable for any injury caused by his instituting[7] or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." (Gov. Code, § 821.6.) Section 821.6 immunity protects "all employees of a public entity," including those without legal training. (*See Asgari v. City of L.A.* (1997) 15 Cal.4th 744, 757; *Tur v. City of L.A.* (1996) 51 Cal.App.4th 897, 901 [immunity "is not limited to peace officers and prosecutors but has been extended to public school officials [and] heads of administrative departments"] [citations omitted].) "Pursuant to [Section 821.6], public employees, acting within the scope of their employment . . . are immune from tort liability for any acts done by the employees in preparation for formal . . . administrative proceedings, including investigation of alleged wrongdoing, and for any acts done to institute and prosecute such formal proceedings." (*Hansen*, *supra*, 171 Cal.App.4th at p. 1547.)

Here, Section 821.6 plainly bars Plaintiff's claims. Plaintiff's Complaint attempts to hold Defendant John Roe liable because he "initiated a wrongful administrative proceeding" against Plaintiff. (See Complaint ¶¶ 32, 50.) That is the sort of conduct to which Section 821.6 applies.

Further, there is no question that any role Defendant John Roe had in initiating proceedings against Plaintiff was performed within the scope of his employment at the University. Defendant

---

[7] As discussed above (see *supra* at 17-19), Defendant John Roe did not actually "institut[e]" or "prosecut[e]" any proceedings against Plaintiff—rather, the University did. But Plaintiff's Complaint repeatedly alleges that Defendant John Roe was responsible for "initiat[ing] a wrongful administrative proceeding against Plaintiff." (Complaint ¶ 32.) Plaintiff is bound by that allegation, and it places Defendant John Roe squarely within the scope of Section 821.6 immunity.

1    John Roe "was responsible for a research laboratory where Jane Roe conducted research" and

2    "was the supervisor of graduate student defendant Jane Roe."  (*Id.* ¶ 3.)  His decision to report that

3    someone was stalking one of his employees and tampering with her lab work clearly falls within

4    the scope of his role as a supervisor and researcher.  (*Id.* ¶¶ 7, 32.)  Multiple courts have held in

5    similar circumstances that employees or supervisors are protected by governmental immunity.

6    (See, e.g., *Ross v. S.F. Bay Area Rapid Transit Dist.* (2007) 146 Cal.App.4th 1507, 1516, as

7    modified on denial of reh'g (Feb. 20, 2007) [barring claims based on allegations that "BART

8    employees initiated and prosecuted administrative proceedings to discipline or discharge Ross

9    based on accusations they knew to be false"]; *Kemmerer v. County of Fresno* (1988) 200

10   Cal.App.3d 1426, 1436-1437 [where "investigation . . . was an essential step to the institution of

11   the disciplinary process," it was "cloaked with [Section 821.6] immunity"].)  Accordingly, any

12   role John Roe had in initiating proceedings against Plaintiff was protected by Section 821.6.

13              (b)      *Defendant John Roe Is Protected by Section 820.2 Immunity*

14          Second, Defendant John Roe is protected by Government Code Section 820.2, which states

15   that "a public employee is not liable for an injury resulting from his act or omission where the act

16   or omission was the result of the exercise of discretion vested in him, whether or not such

17   discretion be abused."  (Gov. Code, § 820.2.)  Here, as discussed above, Defendant John Roe

18   reported Plaintiff's harassment and tampering with laboratory work within the scope of his

19   employment at the University.  Courts have repeatedly held that a decision regarding how to

20   respond to misconduct is a discretionary act to which this sort of immunity properly applies.

21   (*Kemmerer*, *supra*, 200 Cal.App.3d at p. 1438 [immunity applied to "decision whether or not to

22   initiate disciplinary proceedings"]; *Hardy v. Vial* (1957) 48 Cal.2d 577, 582-583 [state employees

23   immune from malicious prosecution claim based on their allegedly wrongful institution of

24   administrative proceeding].)  Accordingly, Defendant John Roe is immune under Section 820.2.

25   **IV.    <u>CONCLUSION</u>**

26          The motion to strike pursuant to Code of Civil Procedure section 425.16 should be granted,

27   and Plaintiff's Complaint should be dismissed with prejudice.

28

1 | DATED:  March 27, 2018

MUNGER, TOLLES & OLSON LLP

By: _____
    JOHN B. MAJOR
Attorneys for Defendants JOHN ROE and JANE ROE

-23-

30-2018-00968408-CU-NP-CJC