MARK M. HATHAWAY
(CA 151332; DC 437335; IL 6327924; NY 2431682)
JENNA E. PARKER (CA 303560)
HATHAWAY PARKER
445 S. Figueroa St. 31st Fl
Los Angeles, California 90071
Telephone: (213) 529-9000
Facsimile: (213) 529-0783
E-Mail: mark@hathawayparker.com
E-Mail: jenna@hathawayparker.com

Attorneys for Plaintiff John Doe

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| JOHN DOE, an individual,<br><br>　　　Plaintiff,<br><br>v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA, a California corporation; and DOES 1 to 50 inclusive,<br><br>　　　Defendants. | Case No. 8:21-cv-01807-JVS-DFM<br><br>**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>*[Filed concurrently with Request for Judicial Notice; Declaration of Mark M. Hathaway]*<br><br>Judge:  Hon. James V. Selna<br>Date:   March 28, 2021<br>Time:  1:30 p.m.<br><br>Trial Date:   None |

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................. 11

II.    FACTUAL BACKGROUND ............................................................ 13

       A.    Regents' First Title IX Administrative Action ............................. 13

       B.    Plaintiff Exhausts Administrative Remedies And Seeks Judicial
             Review ..................................................................................... 14

       C.    Plaintiff's Complaint for Damages Against Individuals John Roe and
             Jane Roe .................................................................................. 15

       D.    Defendant Regents Continues Administrative Actions Against
             Plaintiff ................................................................................... 16

       E.    The Anti-Slapp Attorney Fee Litigation .................................... 16

III.   LEGAL ANALYSIS ....................................................................... 19

       A.    Res Judicata Does Not Apply Here ........................................... 19

       B.    The Final Judgment In The 2018 Complaint Was Not On The Merits ...... 19

       C.    Plaintiff's Successful Writ of Mandate Petition ......................... 20

             1.    The 2018 Complaint Against Individuals John Roe and Jane
                   Roe ............................................................................. 20

             2.    Causes of Action in the 2018 Complaint Are Not the Same ........... 21

             3.    Defendant Regents Was Not In Privity With The Individual
                   Defendants In The 2018 Complaint ................................... 24

       D.    State Causes Of Action Are Sufficiently Pled ........................... 27

             1.    Breach of Contract And Promissory Estoppel ................... 27

                   a)    Academic Deference Does Not Apply ..................... 35

             2.    California Unruh Civil Rights Act ................................... 36

             3.    Negligence ................................................................... 37

       E.    Plaintiff's Negligence and Unruh Act Claims Are Not Barred by
             State-Law Sovereign Immunity ................................................. 38

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

2

F.      Defendant Does Not Dispute that Title IX Causes of Action Are Sufficiently Pled. ....................................................................... 40

G.      Leave To Amend Should Be Permitted ..................................................... 40

IV.   CONCLUSION ................................................................................................. 40

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................... 35

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1988) ...................................................................... 27

*Bd. of Curators of Univ. of Mo. v. Horowitz*,
   435 U.S. 78 (1978) ....................................................................................... 36

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................... 27, 35

*Brown v. Fla. Gulf Coast Univ. Bd. of Trustees*,
   No. 2:18-cv-714-FtM-38MRM, 2019 WL 6219945 (M.D. Fla. Nov. 21,
   2019) ............................................................................................................. 26

*BV Eng'g v. Univ. of Cal.*,
   858 F.2d 1394 (9th Cir. 1988) .................................................................... 40

*Cell Therapeutics, Inc. v. Lash Group, Inc.*,
   586 F.3d 1204 (9th Cir. 2009) .................................................................... 19

*Comm. of Cent. Am. Refugees v. INS*,
   795 F.2d 1434 (9th Cir. 1986) .................................................................... 28

*Cunningham v. Gates*,
   312 F.3d 1148 (9th Cir. 2002) .................................................................... 25

*Doe v. Cal. Inst. of Tech.*,
   No. 2:19-cv-01005-AB, 2019 U.S. Dist. LEXIS 230684, 2019 WL
   8645652 (C.D. Cal. Aug. 13, 2019) ........................................................... 31

*Doe v. Columbia Coll. Chi.*,
   299 F. Supp. 3d 939 (N.D. Ill. 2017) ......................................................... 32

*Doe v. Columbia Coll. Chi.*,
   No. 17-CV-00748, 2018 U.S. Dist. LEXIS 9243 (N.D. Ill. Jan. 22, 2018) ............... 32

*Doe v. Regents of the Univ. of Cal.*,
   891 F.3d 1147 (9th Cir. 2018) ........................................................ 12, 16, 20, 24

*Doe v. Regents of the Univ. of Cal.*,
   No. 20-55831, 2022 U.S. App. LEXIS 725 (9th Cir. Jan. 11, 2022) ............ 12, 23, 40

*Doe v. Univ. of Chi.*,
   No. 16 C 08298, 2017 U.S. Dist. LEXIS 153355, 2017 WL 4163960
   (N.D. Ill. Sep. 20, 2017) ........................................................................... 32

*Drawsand v. F.F. Props., L.L.P.*,
   866 F. Supp. 2d 1110 (N.D. Cal. 2011) .................................... 19, 22, 23, 25

*Erickson v. Pardus*,
   551 U.S. 89 (2007) ..................................................................................... 29

*Fitzgerald v. Barnstable Sch. Comm.*,
   555 U.S. 246 (2009) ................................................................................... 26

*Grutter v. Bollinger*,
   539 U.S. 306 (2003) ................................................................................... 35

*Gustafson v. U.S. Bank N.A.*,
   618 F. App'x 921 (9th Cir. 2015) ............................................................. 21

*Int'l Evangelical Church of Soldiers of the Cross of Christ v. Church of the*
   *Soldiers of the Cross of Christ of Calif.*,
   54 F.3d 587 (9th Cir. 1995) ...................................................................... 22

*Jackson v. Birmingham Bd. Of Educ.*,
   544 U.S. 167 (2005) ................................................................................... 27

*Karimi v. Golden Gate Sch. of Law*,
   361 F. Supp. 3d 956 (N.D. Cal. 2019) ...................................................... 12

*Kay v. City of Rancho Palos Verdes*,
   504 F.3d 803 (9th Cir. 2007) ..................................................................... 11

*Kinman v. Omaha Public School District*,
   171 F.3d 607 (8th Cir. 1999) ..................................................................... 26

*Klarfeld v. United States*,
   944 F.2d 583 (9th Cir. 1991) ..................................................................... 27

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,*
    507 U.S. 163 (1993)...............................................................................27

*M/V American Queen v. San Diego Marine Constr. Corp.,*
    708 F.2d 1483 (9th Cir. 1983) .............................................................28

*Manufactured Home Cmtys., Inc. v. City of San Jose,*
    420 F.3d 1022 (9th Cir. 2005) .............................................................21

*Manzarek v. St. Paul Fire & Marine Ins. Co,*
    519 F.3d 1025 (9th Cir. 2008) .............................................................35

*Migra v. Warren City Sch. Dist. Bd. of Educ.,*
    465 U.S. 75 (1984)...............................................................................19

*Regents of University of Michigan v. Ewing,*
    474 U.S. 214 (1985).............................................................................35

*San Diego Police Officers' Ass'n v. San Diego City Emples. Ret. Sys.,*
    568 F.3d. 725 (9th Cir. 2009) ..............................................................21

*Sateriale v. R.J. Reynolds Tobacco Co.,*
    697 F.3d 777 (9th Cir. 2012) ...............................................................29

*Schwake v. Arizona Board of Regents,*
    967 F.3d 940 (9th Cir. 2020) ...............................................................40

*Shanks v. Calvin Walker & Doctor's Assocs.,*
    116 F. Supp. 2d 311 (D. Conn. 2000)..................................................39

*Swartz v. KPMG, LLP,*
    476 F.3d 756 (9th Cir. 2007) ...............................................................27

*United States v. Dix,*
    491 F.2d 225 (9th Cir. 1974) ...............................................................38

*Walden v. Nevada,*
    941 F.3d 350 (9th Cir. 2019) ...............................................................38

*Woods v. Town of Danville,*
    712 F. Supp. 2d 502 (S.D. W. Va. 2010)..............................................39

---

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

1

<strong>CALIFORNIA CASES</strong>

2

3

*Andersen v. Regents of Univ. of Cal.*,
    22 Cal. App. 3d 763 (1972) ................................................................ 28

4

*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*,
    116 Cal. App. 4th 1375 (2004) ........................................................... 27

5

6

*Balasubramanian v. San Diego Community College Dist.*,
    80 Cal.App.4th 977 (2000) ................................................................. 22

7

8

*Banks v. Dominican College*,
    35 Cal.App.4th 1545 (1995) ............................................................... 35

9

10

*Berman v. Regents of University of California*,
    229 Cal.App.4th 1265 (2014) ........................................................ 28, 30

11

12

*Bernhard v. Bank of Am. Nat'l Tr. & Sav. Asso.*,
    19 Cal. 2d 807 (1942) ........................................................................ 11

13

14

*Bonnell v. Medical Board*,
    31 Cal.4th 1255 (2003) ...................................................................... 35

15

16

*Brennon B. v. Superior Court*,
    57 Cal. App. 5th 367 (2020) ....................................................... 36, 37, 39

17

18

*Burks v. Poppy Const. Co.*
    57 Cal.2d 463 (1962) .......................................................................... 37

19

20

*C.A. v. William S. Hart Union High Sch. Dist.*,
    53 Cal.4th 861 (2012) ........................................................................ 39

21

22

*Cabral v. Ralphs Grocery Co.*
    51 Cal.4th 764 (2011) ........................................................................ 38

23

24

*Carter v. City of Los Angeles.*
    224 Cal.App.4th 808 (2014) ............................................................... 37

25

26

*Castillo v. Glenair, Inc.*,
    23 Cal.App.5th 262 (2018) ................................................................. 25

27

28

*Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Ass'n*,
    60 Cal.App.4th 1053 (1998) .......................................................... 25, 27

*Crowley v. Katleman*,
8 Cal. 4th 666 (1994) ........................................................................22

*Curran v. Mount Diablo Council of the Boy Scouts*,
17 Cal.4th 670 (1998) .......................................................................37

*DKN Holdings LLC v. Faerber*,
61 Cal.4th 813 (2015) .................................................................11, 24

*Gamble v. Gen. Foods Corp.*,
229 Cal. App. 3d 893 (1991) ............................................................21

*Henderson v. Newport-Mesa Unified Sch. Dist.*,
214 Cal. App. 4th 478 (2013) ...........................................................22

*Isbister v. Boys' Club of Santa Cruz*,
40 Cal.3d 72 (1985) .....................................................................36, 37

*Kashmiri v. Regents of University of California*,
156 Cal. App. 4th 809 (2007) ...............................................28, 29, 31

*Knight v. South Orange Community College Dist.*,
60 Cal.App.5th 854 (2021) ................................................................14

*Laks v. Coast Fed. Sav & Loan Ass'n*,
60 Cal. App. 3d 885 (1976) ...............................................................28

*McDonald v. Antelope Valley Cmty. Coll. Dist.*,
45 Cal. 4th 88 (2008) ..................................................12, 16, 20, 24

*Mendoza v. City of Los Angeles*,
66 Cal.App.4th 1333 (1998) ..............................................................37

*Mycogen Corp. v. Monsanto Co.*,
28 Cal. 4th 888 (2002) ......................................................................20

*Paulsen v. Golden Gate University*
25 Cal.3d 803 (1979) ........................................................................35

*People v. Barragan*,
32 Cal. 4th 236 (2004) ......................................................................19

*Randall v. Orange County Council*,
  17 Cal.4th 736 (1998) ...................................................................... 36

*Regents of University of California v. Superior Court*,
  4 Cal. 5th 607 (2018) ................................................................. 37, 38

*Seaman's Direct Buying Service, Inc. v. Standard Oil Co.*,
  36 Cal.3d 752 (1984) ...................................................................... 30

*Searle v. Regents of Univ. of Cal.*,
  23 Cal. App. 3d 448 (1972) ............................................................. 28

*Weikel v. Tcw Realty Fund II Holding Co.*,
  55 Cal. App. 4th 1234 (1997) ......................................................... 20

*White v. Ultramar, Inc.*,
  21 Cal.4th 563 (1999) ...................................................................... 22

*Zevnik v. Superior Court*,
  159 Cal. App. 4th 76 (2008) ........................................................... 19

*Zumbrun v. Univ. of S. Cal.*,
  25 Cal. App. 3d 1 (1972) ................................................................. 28

### STATE CASES - OTHER

*John Doe v. Thomas A. Parham, Regents, et al.*
  Case no. 30-2017-00908019-CU-WM-CJC (filed Orange County,
  3/10/2017) ................................................................................ 11, 15

*John Doe v. John Roe, Jane Roe*,
  Case no. 30-2018-00968408-CU-NP-NJC (filed Orange County,
  01/22/2018) ............................................................................. 11, 15

*John Doe v. The Regents of the University of California*,
  Case No. RG19029617 (filed Alameda County, 08/01/2019) ................... 11

### CONSTITUTIONAL PROVISIONS

California Constitution Article IX, § 5 ........................................................ 36

Michigan Constitution Article I, § 26 ......................................................... 36

**FEDERAL STATUTES**

Title IX ..................................................................................................11, *passim*

**FEDERAL RULES**

Fed Rules Civ. Proc. R. 12(b)(6) .......................................................................27

Fed Rules Civ. Proc. R. 15(a)(2).......................................................................40

**CALIFORNIA STATUTES**

California Business & Professions Code
 § 7523(a) .................................................................................................14

California Civil Code
 § 1550........................................................................................................31
 §§ 1635-1663 ...........................................................................................30
 § 1654........................................................................................................30

California Code of Civil Procedure
 § 1094.5.......................................................................................15, *passim*

California Government Code
 § 815.2.......................................................................................................39
 § 821.6.......................................................................................................17

California Unruh Civil Rights Act, Cal. Civ. Code
 § 51 et seq. ...................................................................................13, *passim*

**UNIVERSITY REGULATIONS AND POLICIES**

University of California - Policy SVSH Sexual Violence and Sexual
 Harassment Policy  (1/1/2016) .....................................................14, 29, 35

University of California Policies Applying to Campus Activities,
 Organizations and Students ("PACAOS") Section 100.00 ........................14

**OPPOSITION MEMORANDUM**

## I.    INTRODUCTION

Res judicata does not bar this suit.

The prior action was a state action filed in California Superior Court, which means that California law controls the determination of res judicata.[1]  *Kay v. City of Rancho Palos Verdes*, 504 F.3d 803, 808 (9th Cir. 2007).

For res judicata to apply in California, each of the following questions must be answered affirmatively:  "[1] Was the issue decided in the prior adjudication identical with the one presented in the action in question? [2] Was there a final judgment on the merits? [3] Was the party against whom the plea [of res judicata] is asserted a party or in privity with a party to the prior adjudication?"  *Bernhard v. Bank of Am. Nat'l Tr. & Sav. Asso.*, 19 Cal. 2d 807, 813 (1942).  The third question was later amended by the California Supreme Court to require complete identity of the parties.  *DKN Holdings LLC v. Faerber*, 61 Cal.4th 813, 823-25 (2015) ("*DKN Holdings*").

In this case, the answer to each of the three relevant questions is decidedly, "No."  The issue decided in the prior adjudication concerned the knowing actions of two

---

[1] Defendant references three state court cases at Motion footnote 1.  The cases are:
Case 1:  *John Doe v. Thomas A. Parham, Regents, et al.*  Case no. 30-2017-00908019-CU-WM-CJC (filed Orange County, 3/10/2017) See Defendant's RJN Exhibit A. Writ of mandate for judicial review of Defendant's first Title IX administrative action.  Judgment entered in favor of Plaintiff on 01/04/2018. See Defendant's RJN Exhibits B, M.
Case 2:  *John Doe v. John Roe, Jane Roe*, Case no. 30-2018-00968408-CU-NP-NJC (filed Orange County, 01/22/2018).  See Defendant's RJN Exhibit I, p. 1. Complaint For Damages For Malicious Prosecution And Abuse Of Process against individuals John Roe and Jane Roe. See Defendant's RJN Exhibit C. Judgment entered against Plaintiff on 01/04/2018. See Defendant's RJN Exhibits H, I.
Case 3:  *John Doe v. The Regents of the University of California*, Case No. RG19029617 (filed Alameda County, 08/01/2019).  Class action on behalf of similarly situated University of California students. At time of filing, Plaintiff was proposed class member but Plaintiff's claims became moot when Suzanne Taylor, UC Systemwide Title IX Director, administratively closed Defendant's second Title IX administrative action on September 30, 2019.  See Defendant's RJN Exhibit K.

individuals and the harm those actions caused Plaintiff. The issue in this matter is the University's violation of Title IX, its discrimination against Plaintiff, its violation of its contractual agreement with Plaintiff, and its negligence in performing its duties to Plaintiff. Although there was a final judgment in the prior damages action against individuals John Roe and Jane Roe, the judgment was not on the merits of Plaintiff's claims but on the statutory protections afforded to those individual defendants despite their wrongful acts. Furthermore, the merits of that matter had nothing to do with the merits of this matter.  The Defendant in this matter was neither a party to the prior matter nor was the Defendant in privity with the individual defendants in the prior matter. Finally, Plaintiff could not have brought the claims at issue in this lawsuit as part of the 2018 lawsuit against individuals John Roe and Jane Roe, as Defendant claims (Motion 8:2-4), because Defendant continued to maintain administrative actions against Plaintiff and Plaintiff was required to exhaust all administrative and judicial remedies first before bringing an action against Defendant Regents.  *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 113 (2008); *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1155 (9th Cir. 2018); *Karimi v. Golden Gate Sch. of Law*, 361 F. Supp. 3d 956, 974 (N.D. Cal. 2019) (students must exhaust a university's internal dispute resolution processes before bringing a civil claim based on a decision subject to such a process.).

As such, this Court should determine that res judicata does not bar John Doe's claims in this matter and permit him to be heard on the merits of this matter.  John Doe's Title IX claims here are similar to the matter of *Doe v. Regents of the Univ. of Cal.*, No. 20-55831, 2022 U.S. App. LEXIS 725 (9th Cir. Jan. 11, 2022) (allegations of external pressures gave rise to a plausible Title IX claim when evaluated in conjunction with the allegations of an internal pattern and practice of bias and specific instances of bias in the student's disciplinary proceedings; the asymmetrical enforcement allegations the appellate court identified could lead to a plausible inference of discrimination on the basis of sex; the fact that sex discrimination was a plausible explanation for the university's handling of the disciplinary case against the student was sufficient for his

Title IX claim to survive a motion to dismiss.)

Plaintiff's state law claims withstand the motion to dismiss standard because Plaintiff has sufficiently plead facts to show breach of contract, promissory estoppel, violation of California Unruh Civil Rights Act, Cal. Civ. Code § 51 et seq., and negligence.

## II.   FACTUAL BACKGROUND

### A.   REGENTS' FIRST TITLE IX ADMINISTRATIVE ACTION

This matter has a long and difficult history that began six years ago in February 2016 when, as a result of using poor research techniques or through inadvertent contamination, Jane Roe, a graduate student at University of California, Irvine (hereinafter "Defendant" or "University"), found that her lab work, which she had done for Professor John Roe, was damaged.  (FAC ¶ 79.)  Plaintiff believes that John Roe and Jane Roe then fabricated a story falsely accusing Plaintiff of stalking in order to blame him for Jane Roe's lost research and to support their fraudulent insurance claim, seeking to recover $25,376.74 related to the lost research. (FAC ¶¶ 58-60.)

Incredibly, just prior to Professor John Roe and student Jane Roe making these allegations against Plaintiff, Plaintiff had described to John Roe that Plaintiff was being stalked. (FAC ¶ 57.) On or about January 26, 2016, Plaintiffs advised UCI Asst. Prof. John Roe and another professor that he was being stalked by a prior girlfriend (hereinafter referred to as "Jane Roe2"). (FAC ¶ 57.) Acting as if such concerns were unimportant, John Roe merely rolled his eyes. (FAC ¶ 57.) The other professor said that Plaintiff was "acting like a bitch" and advised Plaintiff to "man up and downplay your concerns when working with the University going forward… look you're a big brown guy and she's a little asian girl and the optics don't look good, especially nowadays.  I can tell you right now that [Asst. Prof. John Roe] thinks it's complete bullshit. The more you complain about this the worse this will go for you with the University." (FAC ¶ 57.) Less than a month later, in February 2016, John Roe reported to the University's police department and to the University's Title IX Office that Plaintiff had a romantic interest in

Jane Roe, a graduate student in his lab and under his supervision, and that Plaintiff had been stalking Jane Roe for the previous four years, including hacking her computer and social media accounts. (FAC ¶ 58.) John Roe further alleged that Plaintiff sabotaged Jane Roe's lab work. (FAC ¶ 58.)

The short time period and the similarities between the claims made against him and his own report to John Roe are telling. Nevertheless, the University performed no independent inquiry and Plaintiff had the misfortune of being among the very first accused male University of California students targeted and investigated under the brand-new University of California – Policy SVSH Sexual Violence and Sexual Harassment Policy  (1/1/2016).[2]  (FAC ¶¶  1, 61; Defendant's RJN Exhibit L.)  Without cause, the University implemented an order requiring John Doe to remain at least 100 yards from Jane Roe, which precluded him from working on his graduate studies. (FAC ¶ 64.)

### B.   PLAINTIFF EXHAUSTS ADMINISTRATIVE REMEDIES AND SEEKS JUDICIAL REVIEW

After completing an investigation by an unqualified, unlicensed, nonprofessional "investigator" that was replete with due process violations and lack of evidence, the University Title IX office found that Plaintiff was responsible for three violations of University student conduct policies and that Plaintiff was responsible for stalking.  See California Business & Professions Code § 7523(a).  (FAC ¶¶ 51-54; FAC ¶ 82.)

Plaintiff followed the administrative process through to completion.  First, Plaintiff appealed the finding of the Title IX office.  (FAC ¶ 92.) This appeal resulted in the Appeal Body reversing two of the three violations, but still finding a violation of

---

[2]  In January 2916, the University's new SVSH Policy instituted an entirely separate administrative disciplinary system for allegations involving sexual misconduct and eliminated the due process protections that have existed for decades under the University of California Policies Applying to Campus Activities, Organizations and Students ("PACAOS") Section 100.00. (FAC ¶¶  49-50.) The SVSH policy is applied only to campus sexual misconduct proceedings where accused students are invariably male. *Knight v. South Orange Community College Dist.,* 60 Cal.App.5th 854, 866 (2021).  (See FAC ¶¶ 20-35.)

"physical abuse" despite there never being any claim nor evidence of any physical contact between Jane Roe and Plaintiff.  (FAC ¶¶ 105-107.)  Thereafter, Plaintiff appealed to the University Vice Chancellor.  (FAC ¶ 108.)  Although Plaintiff was ultimately able to establish that Jane Roe had knowingly lied to the Appeal Body, "that the allegations of stalking and computer hacking were manufactured by [John Roe] and [Jane Roe]", and that the allegations were used by John Roe to support his insurance claim, Plaintiff's appeal was denied.  (FAC ¶¶ 117-134.)  Thereafter, Plaintiff filed a Petition seeking a Writ of Administrative Mandate and judicial review under California Code of Civil Procedure § 1094.5.  (FAC ¶ 135.) See *John Doe v. Thomas A. Parham, Regents, et al.*  Case no. 30-2017-00908019-CU-WM-CJC (filed Orange County, 3/10/2017) Defendant's RJN Exhibit A.  The University conceded that the writ of mandate should issue and judgment was entered in favor of Plaintiff on January 4, 2018. (FAC ¶¶ 151-153; Defendant's RJN Exhibits B, M.)

## C.   PLAINTIFF'S COMPLAINT FOR DAMAGES AGAINST INDIVIDUALS JOHN ROE AND JANE ROE

On January 22, 2018, Plaintiff filed his Complaint For Damages For Malicious Prosecution and Abuse Of Process seeking recovery from defendants John Roe and Jane Roe in the matter of *John Doe v. John Roe, Jane Roe et al.,* Orange County Superior Court case no. 30-2018-00968408-CU-NP-NJC (hereinafter referred to as the "2018 Complaint"; see Defendant's RJN Exhibits C, I.) These claims for malicious prosecution and abuse of process were made against John Roe and Jane Roe in their individual capacities. Defendant University was not a party to the 2018 Complaint and could not have been a party because the damages Plaintiff sought were based upon tortious acts by John Roe and Jane Roe, not upon any duty the University had to Plaintiff.[3] The result of

---

[3] Plaintiff could not have brought his claims against Defendant Regents as part of the 2018 Complaint against individuals John Roe and Jane Roe because after the judgement in the writ of mandate matter, Defendant Regents had discretion to, and did, continue to maintain administrative actions against Plaintiff.  Plaintiff was required to exhaust all administrative remedies and judicial remedies through California Code of Civil

the University's Title IX investigation, while increasing Plaintiff's damages in that matter had no bearing on his claims against John Roe and Jane Roe, which accrued when they engaged in their tortious conduct. As such, even if the Title IX investigation had ended favorably toward Plaintiff, he still would have had a cause of action against John Roe and Jane Roe.

## D.   DEFENDANT REGENTS CONTINUES ADMINISTRATIVE ACTIONS AGAINST PLAINTIFF

Thereafter, the University's wrongful actions against Plaintiff continued. On March 20, 2018, Plaintiff contacted his UC Faculty Advisor regarding resumption of his graduate studies. (FAC ¶ 156.)

On March 27, 2018, Plaintiff's UC Faculty Advisor continuing the pattern and practice of the University of stalling Plaintiff's return to studies, responded to Plaintiff that he was not up to date about Plaintiff's case and was working with the University to see where things stand. (FAC ¶ 157.)

On March 27, 2018, the University initiated a new administrative Title IX investigation into the same charges that had been dismissed by the Appeal Panel and ordered set aside in the Writ of Mandamus matter. (FAC ¶ 159.) Once again, the University restricted Plaintiff from accessing UCI buildings Natural Sciences II, Engineering Hall, and Gross Hall. (FAC ¶ 159.) Once again, the University unjustly prevented Plaintiff from conducting his graduate studies research. (FAC ¶ 159.)

## E.   THE ANTI-SLAPP ATTORNEY FEE LITIGATION

On March 27, 2018, the same day as Defendant Regents initiated the new Title IX administrative action against Plaintiff, John Roe and Jane Roe, improperly represented by the University's counsel, filed an Anti-SLAPP motion claiming their bad acts were protected by their right to petition and that John Roe's acts were further protected by

---

Procedure § 1094.5 before bringing any civil action against Defendant Regents. *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 113 (2008); *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1155 (9th Cir. 2018).

California Government Code § 821.6, which states "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." (FAC ¶ 158; Regents RJN Exhibit D.) The California trial court entered judgment in favor of John Roe and Jane Roe but awarded no attorney fees to the University." (Plaintiff's RJN Exhibits 1-2; Defendant's RJN Exhibit I.) The University (nominally John Doe and Jane Roe) appealed the trial court's order and the Court of Appeal reverse the trial court and remanded.  (Plaintiff's RJN Exhibit 3.)  On remand, the trial court determined that, "If the University has not crossed the line and unconstitutionally gifted public funds in providing a defense of the defendants here, it has probably at a minimum cozied up to it. But the court need not decide that issue (unless the University wants it addressed) because there is another reason why the request for attorney fees should be denied in its entirety."  The trial court found, *inter alia*, that, "The financial and academic devastation brought on the plaintiff by this entire episode is extreme;"[4] "the University over-litigated the case. It is hard to understand, even for higher-priced attorneys at a major law firm, to run up a bill on the first go around that exceeds $150,000 on a simple motion;" "The University was both prosecutor and judge in the administrative proceedings. And it was paying for a legal defense in this action [against John Roe and Jane Roe] while it was supposed to be acting as an independent decision-maker in the administrative proceedings—and there were so many of them."[5] (Plaintiff's RJN Exhibit 6.) The state trial court recognized that John Doe was the injured party and that John Roe and Jane Roe (the University) should not be rewarded for their actions and denied the motion for attorney fees. On Friday, February 25, 2022, the University filed their Notice of Appeal of the denial of the award of attorney fees. (Plaintiff's RJN Exhibit 7.)

While that 2018 Complaint was pending and the trial court's denial of an award of

---

[4]  See Plaintiff's RJN Exhibits 4, 6.

[5] By the time of the hearing on the University's renewed motion for attorney fees (Anti-SLAPP), the record of Defendant's administrative actions against Plaintiff was some 3,000 pages. (Plaintiff's RJN Exhibit 5.)

attorney fees to the University was on appeal, the University's second Title IX investigation was ongoing for over one and a half years. (FAC ¶ 159.)  The University referred to its second Title IX investigation in Plaintiff's action for damages in the 2018 Complaint to show that the University's Title IX action against Plaintiff had not been concluded.  (FAC ¶ 160.)  It was not until Plaintiff's 2018 Complaint was dismissed that the University notified Plaintiff on September 30, 2019 that the University had concluded the second Title IX investigation without any administrative action. (FAC ¶ 161.)

In addition to Defendants' first and second Title IX investigations, the University also initiated a Research Misconduct investigation against Plaintiff (FAC ¶ 165) and instigated a Research Misconduct investigation at National Science Foundation. (FAC ¶ 167.)  In February 2018, after the UCI and NSF research misconduct investigations failed to find Plaintiff responsible for research misconduct, UCI referred the research misconduct charges to the UCI Office of Academic Integrity and Student Conduct. (FAC ¶ 168.)

Despite concluding its administrative process and finding Plaintiff not responsible for any wrongdoing with regard to the Title IX action, when Plaintiff requested to reenroll and sought accommodations, the University counsel denied Plaintiff's requests, and continued to keep his graduate studies in limbo by inappropriately tying settlement of the Anti-SLAPP ruling to Plaintiff's request for reasonable accommodations for resuming his studies, thus violating University policy.  (FAC ¶¶ 162-163.) Only after Plaintiff insisted that the Abuse of Process/Anti-SLAPP appeal should not influence Plaintiff's ability to receive accommodations to continue his graduate studies pursuant to University policy was Plaintiff allowed to reenroll, with some accommodations. (FAC ¶ 164.)

After finally receiving a final disposition from the University, Plaintiff timely filed his Complaint for Damages against the University, which is the Complaint in this matter. This Complaint is made against the University, not against John Roe or Jane Roe. This Complaint seeks damages for breach of contract, promissory estoppel, violation of Title IX, violation of California Unruh Civil Rights Act, Cal. Civ. Code § 51 et seq., and

negligence. None of these claims are based upon the tortious conduct of John Roe or Jane Roe. Instead, these claims are based upon the University's duty to Plaintiff and its breach of that duty and the University's violation of Title IX.

## III.   LEGAL ANALYSIS

### A.   RES JUDICATA DOES NOT APPLY HERE

Res judicata "bars any subsequent suit on claims that were raised or could have been raised in a prior action." *Cell Therapeutics, Inc. v. Lash Group, Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2009).  When res judicata effect relates to a state court judgment, federal courts must apply state law of the court rendering judgment. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  Here, that is California law and under such law res judicata applies when "(1) [a] claim ... raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits;2 and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding." *People v. Barragan,* 32 Cal. 4th 236, 252 (2004).

" "Res judicata serves "the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation."  *Drawsand v. F.F. Props., L.L.P.*, 866 F. Supp. 2d 1110 (N.D. Cal. 2011) ("*Drawsand*"), citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979).) "Res judicata precludes the relitigation of a cause of action only if (1) the decision in the prior proceeding is final and on the merits; (2) the present action is on the same cause of action as the prior proceeding; and (3) the parties in the present action or parties in privity with them were parties to the prior proceeding." *Zevnik v. Superior Court*, 159 Cal. App. 4th 76, 82 (2008).

### B.   THE FINAL JUDGMENT IN THE 2018 COMPLAINT WAS NOT ON THE MERITS

The purpose of res judicata is to limit unnecessary relitigation, while ensuring the fair and complete adjudication of distinct harms.  *Weikel v. Tcw Realty Fund II Holding*

---

*Co.*, 55 Cal. App. 4th 1234, 1245 (1997). Therefore, "where a judgment is not rendered on the merits, it does not operate as a bar" to subsequent litigation. (*Id.*)

### C.   PLAINTIFF'S SUCCESSFUL WRIT OF MANDATE PETITION

The Petition for Writ of Mandate is not a basis for a finding of res judicata. Although not argued by Defendant that Plaintiff's filing of a Petition for Writ of Mandate may be a basis for res judicata, Defendant refers to the Petition a number of times. As such, Plaintiff sets forth this opposition to any claim made regarding the Petition for Writ of Mandate.

The Writ of Mandate was required to be first-filed to exhaust judicial remedies under California Code of Civil Procedure § 1094.5 prior to filing a complaint for damages or the findings of the University would have been give preclusive effect. *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 113 (2008); *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1155 (9th Cir. 2018). Therefore, the Petition for Writ of Mandate was filed seeking the purely declaratory relief of reversing the University's baseless, prejudiced, and unjust administrative disciplinary decision. Plaintiff's Petition for Writ of Mandate falls under California's declaratory relief exception to res judicata, which "carves out an exception to the bar of res judicata only where a plaintiff's initial action seeks purely declaratory relief." *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 897 (2002).

#### 1.   *The 2018 Complaint Against Individuals John Roe and Jane Roe*

While the 2018 Complaint may have ended with a final judgment on the merits, the final judgment did not determine any of the issues raised in this current case. The final judgment in the 2018 Complaint held that "[t]he filing of a police report, even if it later turns out no crime has been committed, is protected activity." (See Plaintiff's RJN Exhibit 1, at p. 1.) Importantly, the trial court in the 2018 Complaint made no finding on Plaintiff's allegation that John Roe and Jane Roe made knowingly false statements to the police because the evidence was not considered and discovery not completed at the anti-SLAPP phase. Likewise, the trial court held that "submission of a complaint to a

---

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

University agency charged with investigating the act complained of (here, the Title IX Agency) is also protected activity. See Plaintiff's RJN Exhibit 1, at p. 1.)  Once again, the Court made no determination on Plaintiff's allegation that the complaint to the University was knowingly false. Likewise, the trial court noted that the individual defendants in that matter did not stand in the shoes of the University; therefore, the claim for malicious prosecution was barred because it was the University, not John Roe or Jane Roe who initiated the Title IX proceeding. (*Id*.) Finally, the trial court noted that the administrative matter was no longer complete because the University reinitiated its Title IX proceedings. (*Id*.)

None of the findings in the 2018 Complaint are determinative of the issues in this matter. As such, there has been no prior final judgment on the merits of any of the claims raised in this matter.

### 2.    Causes of Action in the 2018 Complaint Are Not the Same

California utilizes the "primary rights theory," which states that "two actions constitute a single cause of action if they both affect the same primary right." *Gamble v. Gen. Foods Corp.*, 229 Cal. App. 3d 893, 898 (1991).  "[A] "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty." *Manufactured Home Cmtys., Inc. v. City of San Jose*, 420 F.3d 1022, 1031 (9th Cir. 2005), citing *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 904 (2002).

Courts caution that "the 'primary right' brush cannot be wielded too carelessly" because "different primary rights may be violated by the same wrongful conduct." *San Diego Police Officers' Ass'n v. San Diego City Emples. Ret. Sys.*, 568 F.3d 725, 734 (9th Cir. 2009), quoting *Crowley v. Katleman*, 8 Cal. 4th 666, 681 (1994).  Therefore, "the question is not whether the two suits 'arise out of the same transactional nucleus of facts,' but whether the plaintiff seeks to vindicate the same 'primary right' in both suits." *Gustafson v. U.S. Bank N.A.*, 618 F. App'x 921, 922 (9th Cir. 2015).  "The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary

right gives rise to but a single cause of action." *Drawsand*, *supra*, 866 F. Supp. 2d at p. 1126, citing *Mycogen Corp. v. Monsanto Co.*, 28 Cal.4th 888, 904 (2002).

The California Supreme Court noted that "[t]he primary right theory has a fairly narrow field of application. It is invoked most often when a plaintiff attempts to divide a primary right and enforce it in two suits." *Crowley*, *supra*, 8 Cal.4th at p. 682. Therefore, "a single cause of action is based on the harm suffered, rather than on the particular legal theory asserted or relief sought by the plaintiff." *Balasubramanian v. San Diego Community College Dist.*, 80 Cal.App.4th 977, 991 (2000), citing *Agarwal v. Johnson*, 25 Cal.3d 932, 954-955 (1979), disapproved on another ground in *White v. Ultramar, Inc.*, 21 Cal.4th 563, 574, fn. 4 (1999). "[A] plaintiff's primary right is defined by the legally protected interest which is harmed by defendant's wrongful act, and is not necessarily coextensive with the consequence of that wrongful act." *Henderson v. Newport-Mesa Unified Sch. Dist.*, 214 Cal. App. 4th 478, 499 (2013).

The University incorrectly alleges that the claim in the 2018 Complaint and the claim in this matter involve "the same alleged wrong: 'Jane Roe's and John Roe's false allegations …, and the UCI Title IX Office's failure to conduct a fair, impartial, and independent investigation into John Roe's and Jane Roe's false charges." (Motion pp. 17-18). That is just a description of what happened, and it begs the primary rights question because "the same wrongful act may invade many different primary rights." *Int'l Evangelical Church of Soldiers of the Cross of Christ v. Church of the Soldiers of the Cross of Christ of Calif.*, 54 F.3d 587, 591 (9th Cir. 1995). The claims in the 2018 Complaint and in this matter do not involve the same alleged wrong. Although the University's deficient investigation, violation of Title IX, breach of contract, and negligence began with Jane Roe and John Roe's wrongful acts and were a consequence of the wrongs done to Plaintiff by Jane Roe and John Roe, Plaintiff's legal right not to have false claims made about him is separate from Plaintiff's Title IX rights and contract rights. Although John Roe and Jane Roe's wrongful acts were one cause of the damage to Plaintiff's reputation and his loss of education, the University remains responsible for its

own violations of Plaintiff's rights and its own wrongful acts done to Plaintiff. Specifically, the University is responsible for its own failure to fairly and impartially investigate the claims against John Doe; its own failure to investigate the claims made by John Doe; its violation of Title IX; and its actions in treating John Doe differently than other similarly situated females. The University is not responsible for Jane Roe and John Roe's lies but is responsible for how it handled them.

In the 2018 Complaint, the harm suffered by Plaintiff was that he was slandered by the false and malicious claims made by Jane Roe and John Roe to the University for the insurance claim and to the University police and the University Title IX office, which ultimately resulted in the investigation and improper sanctions by the University. In this matter, the harm suffered by Plaintiff was that the University failed to fairly and impartially investigate the claims made by and against John Doe, resulting in arbitrary and capricious sanctions against him, treated him differently than similarly situated females, and discriminated against Plaintiff on the basis of sex.  See, *Doe v. Regents of the Univ. of Cal.*, No. 20-55831, 2022 U.S. App. LEXIS 725, at *3 (9th Cir. Jan. 11, 2022).

The cases involve separate wrongs done by separate actors. The cases involve separate and distinct theories of recovery. The 2018 Complaint involved torts committed by Jane Roe and John Roe against Plaintiff. Even if the Title IX action had ended favorably to Plaintiff in the first instance, he still would have had the same claims against Jane Roe and John Roe. This lawsuit involves Title IX violations by the University, discrimination by the University, breach of contract by the University and negligent conduct by the University. If the University had abided by its duties and treated Plaintiff justly after the false claims were made by John Roe and Jane Roe, Plaintiff would not have had a cause of action against the University. As such, the causes of action are divisible, which means that they do not encompass the same primary right.  *Drawsand*, *supra*, 866 F. Supp. 2d at p. 1126.

The University's claim that Plaintiff could have brought his claims against the

---

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

23

University at the time of filing the 2018 Complaint is irrelevant. Whether Plaintiff could have brought a claim at that time, which is denied, is not the same as a requirement that Plaintiff had to bring his claim or risk losing his right to bring one. Plaintiff was under no obligation to file suit against the University at the same time he filed suit against Jane Roe and John Roe. *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 820 (2015) (noting that the injured party has separate claims against each obligor). Indeed, Plaintiff could not have brought his action against the University until he had exhausted judicial review under California Code of Civil Procedure § 1094.5. *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 113 (2008); *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1155 (9th Cir. 2018).

Therefore, Defendant's motion to dismiss based upon res judicata should be denied because the present cause of action is not the same cause of action as the prior proceeding.

### 3. *Defendant Regents Was Not In Privity With The Individual Defendants In The 2018 Complaint*

"Judgment in the first action does not bar judgments in later actions, even when they allege the same claim of wrongdoing, as long as the suits are against different parties." *DKN Holdings*, supra, 61 Cal. 4th at p. 820. *DKN Holdings* makes it clear that "[t]he injured party has separate claims against each obligor, regardless of whether the obligation arises from a tort or breach of contract." *Id.* at 822, citing Rest. 2d Judgments, § 49, com. A, p. 34. "Accordingly a judgment for or against one obligor does not result in merger or bar of the claim that the injured party may have against another obligor." (*Id.*)

Plaintiff has separate claims against John Roe, Jane Roe, and the University. The prior lawsuit was brought against John Roe and Jane Roe for the torts they personally committed against John Doe. It did not involve the discriminatory actions of the University, the breach of contract by the University, the Title IX violations by the University, or the University's negligence. Neither John Roe nor Jane Roe represent the University Title IX Office nor Regents. Therefore, the judgment for John Roe and Jane

---

Roe based upon statutory protections individual to them does not bar Plaintiff's claims against the Defendant Regents.

John Roe's employment with the University does not justify a determination that he was in privity with the University regarding the issues raised in this matter. The "privity requirement" is only satisfied for "matters within the scope of employment." *Drawsand*, *supra*, 866 F.Supp.2d 1110, 1127 (N.D. Cal. 2011). "A nonparty alleged to be in privity must have an interest so similar to the party's interest that the party acted as the nonparty's 'virtual representative' in the first action." *Castillo v. Glenair, Inc.*, 23 Cal.App.5th 262 (2018), quoting *DKN Holdings*, supra, 61 Cal.4th at p. 826. Stated differently, there is only privity if the "party in the suit which is asserted to have a preclusive effect had the same interest as the party to be precluded," and if that "party had a strong motive to assert that interest." *Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Ass'n*, 60 Cal.App.4th 1053, 1071 (1998). The Ninth Circuit has termed this type of relationship as one of having a "virtual representative." *Cunningham v. Gates*, 312 F.3d 1148, 1156 (9th Cir. 2002). *Cunningham* reaffirmed *Citizens for Open Access*, holding that because the parties' interests may "have sharply diverged" at trial, the parties could not be found to be in privity.  *Cunningham v. Gates*, 312 F.3d at p. 1156.

John Roe and Jane Roe had no motive to assert the University's interests. In fact, in the prior matter, John Roe and Jane Roe specifically argued that Plaintiff's case should be made against the University, not them, saying, "Plaintiff's malicious prosecution claim is barred because the University, not defendants, initiated proceedings against Plaintiff." (Defendant's Exhibit D at p. 18.) John Roe and Jane Roe's only interest in the prior matter was to defend themselves against the tort claims Plaintiff made against them. They had no interest in proving that the University complied with its own policies. They had no interest in proving that the University provided Plaintiff with due process. They had no interest in proving that the University was not negligent, except to the extent necessary to prove their own actions were not knowingly wrongful and malicious. John Roe and Jane

---

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

25

Roe's interest most likely would have sharply diverged with the University's interest at trial. In fact, the University may have ultimately filed a cross-claim against them.

Defendant's reliance upon *Brown v. Fla. Gulf Coast Univ. Bd. of Trustees*, No. 2:18-cv-714-FtM-38MRM, 2019 WL 6219945 (M.D. Fla. Nov. 21, 2019) is misplaced for several reasons. Most importantly, the holding in *Brown* is not as alleged by Defendant. The Title IX Coordinator in *Brown* was able to claim res judicata for claims made against her in only her official capacity, not for those claims made against her in her individual capacity. As neither John Roe nor Jane Roe were sued in their official capacities, neither represented the University's position in any respect. As correctly noted by the Court in *Brown*, Title IX actions cannot be brought against individuals. As only individuals were sued in the 2018 Complaint, the California State Court did not consider any Title IX claims and no Title IX claims could be brought against them individually. See *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009)*; Kinman v. Omaha Public School District*, 171 F.3d 607, 611 (8th Cir. 1999). The remainder of claims against the individual Title IX Coordinator in *Brown* were dismissed by Sovereign Immunity, not res judicata. Nothing in *Brown* stands for the proposition that a prior suit against a professor employed by a university for the wrongful act of making a false claim and against a university student for her wrongful act of making a false claim will later shield the University from liability for violating Title IX or its own torts.

Finally, the Court should take note of the comments made by the trial court regarding the 2018 Complaint that, "[i]t is hard to say that the filing of knowingly false allegations against a graduate student and the filing of a knowingly false insurance claim with the University fall within the scope of employment." (Exhibit A.) As such, the suit against John Roe and Jane Roe did not concern matters within the scope of their employment. Furthermore, the University's interests and the John Roe and Jane Roe's interests are divergent. Therefore, because the University's "motive for asserting a common interest is relatively weak, [this Court should] not infer adequate representation and there is no privity." *Citizens for Open Access to Sand and Tide, Inc.*, supra, 60

Cal.App.4th at p. 1071.

**D.   STATE CAUSES OF ACTION ARE SUFFICIENTLY PLED**

In considering a Fed Rules Civ. Proc. R. 12(b)(6) motion to dismiss, this Court should not dismiss Plaintiff's Complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In making its determination, the Court may generally look only to the pleadings and the attachments thereto. *Swartz v. KPMG, LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Klarfeld v. United States*, 944 F.2d 583, 585 (9th Cir. 1991).  While conclusory allegations are not enough to avoid dismissal, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the issue "is not whether plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence to support the claims." *Jackson v. Birmingham Bd. Of Educ.*, 544 U.S. 167, 184 (2005) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.").

### 1.   *Breach of Contract And Promissory Estoppel*

A breach of contract claim under California law requires a plaintiff to show: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1391 n.6 (2004).

A promissory estoppel claim requires a plaintiff to allege: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the

reliance must be reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Laks v. Coast Fed. Sav & Loan Ass'n*, 60 Cal. App. 3d 885, 890 (1976).

It is well established that the basic relationship between a student and a university is contractual in nature. *Zumbrun v. Univ. of S. Cal.*, 25 Cal. App. 3d 1, 10 (1972) ("The catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant become a part of the contract."); *Searle v. Regents of Univ. of Cal.*, 23 Cal. App. 3d 448, 452 (1972) (students have certain contractual rights); *Andersen v. Regents of Univ. of Cal.*, 22 Cal. App. 3d 763, 769 (1972) (A contract is created with the state which, by its very nature, incorporates constitutional principles of due process); *Kashmiri v. Regents of University of California,* 156 Cal. App. 4th 809 (2007) ([B]y the act of matriculation, together with payment of required fees, a contract between the student and the institution is created....") And it is undeniable that a University is bound by and must comply with its own policies and procedures. *Berman v. Regents of University of California*, 229 Cal.App.4th 1265, 1271-72 (2014).

Most of the cases upon which the University relies for its argument seeking to dismiss Plaintiff's contract and promissory estoppel claims are unpublished trial court opinions,[6] which are not binding on this Court, and which are fact sensitive. This Court should not rely upon such fact sensitive decisions because whether an agreement exists is "a question of fact." *Kashmiri v. Regents of University of California*, 156 Cal.App.4th 809, 829 (2007). "To be enforceable under California law, a contract must be sufficiently definite "for the court to ascertain the parties' obligations and to determine whether those

---

[6] Unpublished orders have no precedential value. See *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1438 n.5 (9th Cir. 1986), citing former Ninth Circuit Rule 21(c). "As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it. [Citations] But a court can properly notice a doctrine or rule of law from such prior case and apply that principle under the theory of stare decisis. [Citations]." *M/V American Queen v. San Diego Marine Constr. Corp.,* 708 F.2d 1483, 1491 (9th Cir. 1983).

obligations have been performed or breached. [citations] The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy."  *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 789 (9th Cir. 2012).

To determine whether a contract exists, the Court "must give effect to the mutual intention of the parties as it existed at the time the contract was" entered into. (*Kashmiri*, 156 Cal.App.4th at 831.) The reasonableness of Plaintiff's "expectation is measured by the definiteness, specificity, or explicit nature of the representation at issue." (*Id.* at 832.)

Defendant argues while Plaintiff and all the other 280,000 students at the University of California are bound to comply with the specific terms of the SVSH Policy and Student Code of Conduct drafted by the University, the words that the University used to describe its own obligations and guarantees to students are too ill-defined and vague to be enforceable under contract and estoppel principles.  (Motion, pp. 17-18.)

Defendant Regents may ultimately prevail on summary judgment or at trial, but Plaintiff should be permitted to pursue his breach of contract and promissory estoppel claims at this pleading stage of the litigation.

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929, 940, 2007 U.S. LEXIS 5901, *21 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).
>
> *Erickson v. Pardus,* 551 U.S. 89, 93 (2007).

Defendant's argument that the terms of the Policy that the University drafted and which was approved by the President are too vague for the University to comply is specious on at least the following three grounds:

(1) California law implies in *every* contract a covenant of good faith and fair

---

dealing.  (*Seaman's Direct Buying Service, Inc. v. Standard Oil Co.,* 36 Cal.3d 752, 768 (1984).  A contract of adhesion that is used by a university as a sword and shield against its own students violates any reasonable concept of good faith and fair dealing.

(2) fairness and impartiality in university discipline procedures is required by California law and subject to judicial review under Cal. Code Civ. Proc. § 1094.5.  Decisions by administrative agencies, including disciplinary decisions by private and public universities, are routinely subject to judicial review for fairness under California Code of Civil Procedure § 1094.5 and often found to be unfair, as occurred in Plaintiff's case.

(3) The University is bound by law to comply with its own policies and procedures, including the UC-drafted Student Code of Conduct. *Berman v. Regents of University of California,* 229 Cal.App.4th 1265, 1271-72 (2014).  What an absurd result where a University must keep its promises to students as a matter of California law, but those same University promises are not unambiguous enough to be enforced by students under contract and promissory estoppel principles.

Fairness and impartiality are not vague terms devoid of sufficient definition or legal purpose to be enforceable under contract and promissory estoppel principles.  The specific terms of the University-drafted Student Code of Conduct, which the University is bound by California law to follow, may be interpreted under California Civil Code §§ 1635-1663.  Any ambiguity in the University's promises, should go against the University, which made the promises and drafted the language.

> In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.
>
> California Civil Code § 1654.

Also unavailing is Defendant's argument that because Section IV(B) of the SVSH Policy makes clear that the University can change the SVSH Policy at any time, the

applicable Policy is not an agreement.  (See Defendant's RJN <u>Exhibit</u> L.)  But this does not defeat the fact that students agree that the SVSH Policy may be revised from time-to-time nor the fact that both students and the University agree to comply with applicable Policy.  The University policies and regulations meet the elements of a contract. California Civil Code § 1550.

Most of the cases upon which the University relies for its argument seeking to dismiss Plaintiff's contract and promissory estoppel claims are unpublished trial court opinions, which are not binding on this Court, and which are fact sensitive. This Court should not rely upon such fact sensitive decisions because whether an agreement exists is "a question of fact." *Kashmiri v. Regents of University of California*, 156 Cal.App.4th 809, 829 (2007).

The order of Hon. André Birotte Jr. in the Central District of California concerns allegations of the general timing and conduct of Title IX investigations, such as "within a reasonably prompt time frame," "as soon as practicable," and to "not ask questions or seek evidence of complainant's prior sexual conduct with anyone other than the respondent," to not "retaliate" against students "for making a good-faith report of sexual violence"; and to "not tolerate intentional false reporting of incidents."  The closest language analogous to Plaintiff's situation at UC Irvine are plaintiff Jane Doe's allegations that Cal Tech failed to use investigators who were "impartial" and were "trained regularly in issues related to sexual misconduct."  *Doe v. Cal. Inst. of Tech.*, No. 2:19-cv-01005-AB (KSx), 2019 U.S. Dist. LEXIS 230684, at *14, 2019 WL 8645652, at *5 (C.D. Cal. Aug. 13, 2019).   Whether Cal Tech's failure to be "impartial" is a breach of contract was not heard on the merits and Judge Birotte's order dismissing Jane Doe's breach of contract claim in her *Second Amended* Complaint was issued with leave to amend. *Id.*

A second trial court order is from the Northern District of Illinois, Eastern Division and concerns not breach of contract, but promissory estoppel under Illinois law.  Hon. Edmond E. Chang did find, under the facts of that case, that the University of Chicago's

promise to adjudicate complaints in a fair and impartial manner, the promises to provide in all cases of alleged sexual misconduct "a prompt, fair, impartial and thorough investigation and resolution that is consistent with the University's policies and is transparent to the complainant and the respondent," and the University's promise to implement its policies in a manner "consistent with federal, state, and local regulations governing non-discrimination and unlawful harassment including ... Title IX" were definite enough to constitute an *unambiguous* promise. *Doe v. Univ. of Chi.*, No. 16 C 08298, 2017 U.S. Dist. LEXIS 153355, at *28, 2017 WL 4163960, at *10 (N.D. Ill. Sep. 20, 2017). Judge Chang noted that "John Doe correctly points out that promises sufficient to support a claim of promissory estoppel may come from a defendant's policies and procedures manual." *Doe v. Univ. of Chi.,* 2017 U.S.Dist.LEXIS 153355, at *30. Judge Chang concluded that John Doe's claims fell short of alleging a valid claim for promissory estoppel.

Defendant also cites a third trial court order, also from Illinois, that also addressed promissory estoppel under Illinois law. Referring to *Doe v. Univ. of Chi.* case and Judge Chang's order, Hon. Amy J. St. Eve granted Columbia College Chicago motion to dismiss, but without prejudice. *Doe v. Columbia Coll. Chi.,* 299 F. Supp. 3d 939, 956 (N.D. Ill. 2017). Doe apparently filed an amended complaint, adding a breach of contract cause. The trial court ultimately granted Columbia College Chicago's motion to dismiss, specifically the breach of contract claim on the grounds that Doe failed to allege that the college's actions or decisions were arbitrary or capricious, as required under Illinois law. *Doe v. Columbia Coll. Chi.* , No. 17-CV-00748, 2018 U.S. Dist. LEXIS 9243 (N.D. Ill. Jan. 22, 2018)

Plaintiff specifically plead definite and unequivocal promises made by the University in its policies and procedures. Specifically, Plaintiff listed definite promises made by the University, which the University violated as follows:

- Students are guaranteed "[t]he opportunity for a prompt and fair hearing." (FAC ¶ ¶ 45.) Plaintiff did not receive a prompt and fair hearing. The first

---

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

hearing received by Plaintiff was during his administrative appeal, which was held on November 10, 2016, 233 days after the Notice of Investigation was issued on March 22, 2016. The hearing was not fair as Plaintiff was limited to the issues he could raise and the findings were against the weight of the evidence.

- "[T]he University shall bear the burden of proof." (FAC ¶ 45.) The University failed to bear the burden of proof, requiring Plaintiff to prove that he was innocent, or not responsible.

- [T]he student shall have the opportunity to present documents and witnesses and to confront and cross-examine witnesses presented by the University." (FAC ¶ 45.) Plaintiff was not provided with any opportunity to cross-examine witnesses before the Title IX investigator/adjudicator nor before the Appeal Body. (FAC ¶¶ 81-82, 96.)

- "[N]o inference shall be drawn from the silence of the accused." (FAC ¶ 45.)

- The University Research Misconduct Policy required that the University conduct an inquiry prior to initiating any investigation into research misconduct. (FAC ¶ 65.) The University did not conduct an inquiry prior to initiating its investigation. (FAC ¶ 65.)

- "The investigation file must be retained and made available to the parties on request…" (FAC ¶ 75.) Plaintiff did not receive a copy of the evidence, despite his multiple requests. (FAC ¶¶ 74, 80, 83.)

- The University promised that it was "committed to taking reasonable efforts to assist any student who has been disadvantaged with respect to … academic status as a result of the unsubstantiated allegations. (FAC ¶ 162.) After the various administrative actions against Plaintiff ended, the University failed to make any reasonable effort to assist Plaintiff, denying him reasonable accommodations. (FAC ¶ 162.)

- The University guaranteed that it would not discriminate "based on sex,

---

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

33

gender, gender identity, gender expression, sex- or gender-stereotyping, [or] sexual orientation," and expressed that to do so "violates law and other University policies." (FAC ¶ 188.) However, the University did discriminate against Plaintiff based upon his sex, gender, gender identity, gender expression and/or sexual orientation.

- The University's local Student Adjudication model for Sex Offenses and Sexual Harassment pledged that the Title IX Officer would "oversee the investigation." (FAC ¶ 191.) The Title IX Officer did not properly oversee the investigation and thus either intentionally or unintentionally was unable to answer questions about the investigation when asked by the Appeal Body. (FAC ¶ 104.)

- The University's local Student Adjudication model for Sex Offenses and Sexual Harassment promised that the Title IX Officer would designate an investigator to conduct a fair, thorough, and impartial investigation." (FAC ¶ 191.) The investigator did not conduct a "fair, thorough, and impartial investigation," instead the investigator hid evidence and attempted to mislead the Appeal Body. (FAC ¶ 102.)

- University Policy on Student Conduct and Discipline provided that students would "be afforded basic standards of procedural due process," including "[n]otice to the accused of the charges and evidence," and an "[o]pportunity of the accused to respond to the evidence." (FAC ¶ 192.) Plaintiff was deprived of basic standards of procedural due process. He was not provided with a notice of the charges and he was not provided with the evidence. (FAC ¶¶ 68, 74, 80, 83.)

The policies set forth above and relied upon by Plaintiff are unequivocal. They are not vague or indefinite. As such, it was reasonable for Plaintiff to rely upon the University's obligations when he engaged in and cooperated in the Title IX process.

Plaintiff specifically plead that he reasonably relied upon the University's promises not only in choosing to apply to this University, but also in participating in the investigation and administrative process. (FAC ¶¶ 221, 222.)

Plaintiff was only required to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). He has done so. His claim has facial plausibility because he has plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In this 12(b)(6) proceeding, the Court must accept the facts alleged as true. *Manzarek v. St. Paul Fire & Marine Ins. Co*, 519 F.3d 1025, 1031 (9th Cir. 2008). Accepting the specific facts, set forth in the Complaint, the Court can draw the reasonable inference that the University made contractual promises to Plaintiff upon which he reasonably relied and the University violated those promises. As such, Defendant's request to dismiss Plaintiff's contractual and promissory estoppel claims must be denied.

### a)   *Academic Deference Does Not Apply*

The University's claim that it should be given academic deference is misplaced. The doctrine of judicial nonintervention into the academic affairs of schools does not apply in instances of non-academic affairs, such as this Title IX investigation and hearing process for alleged violation of the University's SVSH Policy. (See *Banks v. Dominican College,* 35 Cal.App.4th 1545 (1995); *Paulsen v. Golden Gate University* 25 Cal.3d 803 (1979). The issue before this Court is not based upon an academic decision made by the University. Deference to a University's determinations is only required when the University has "'comparative interpretative advantage over the courts.'" *Bonnell v. Medical Board*, 31 Cal.4th 1255, 1265 (2003). As such, colleges and universities are entitled to "academic deference." *Regents of University of Michigan v. Ewing,* 474 U.S. 214 (1985) [courts must defer to universities in reviewing the "substance of a **genuinely academic** judgment" made in "good faith"], emphasis added; *Grutter v. Bollinger*, 539 U.S. 306, 328 (2003), superseded on other grounds; Michigan Constitution Art. I, § 26

---

[courts have a "tradition of giving a degree of deference to a university's academic decisions, within constitutionally prescribed limits"].  However, alleged "[m]isconduct is a very different matter from failure to attain a standard of excellence in studies." *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 87 (1978).  The issue before this Court is not an academic one, but an issue of whether the substantial evidence supports a finding that Plaintiff violated "the prohibition against sexual misconduct" and the "prohibition against dating violence."

### 2.    *California Unruh Civil Rights Act*

The University incorrectly compares itself to a public school. Article IX, Section 5 of the California Constitution guarantees that "[t]he Legislature shall provide for a system of common schools by which a free school shall be kept up and supported in each district at least six months in every year, after the first year in which a school has been established." (Cal. Const. Article IX, § 5.) A public school is "a state entity fulfilling a state constitutional mandate." *Brennon B. v. Superior Court*, 57 Cal. App. 5th 367, 388 (2020).

The Unruh Act applies to "all business establishments of every kind whatsoever," such terminology does not exclude colleges and universities or trusts. The California Supreme Court has interpreted the Act's coverage "in the broadest sense reasonably possible." *Isbister v. Boys' Club of Santa Cruz*, 40 Cal.3d 72, 75-76 (1985). The University falls within many of the descriptors of a business. The University provides a "physical plant" for students to "use at their convenience" and for which they pay annual tuition. ( *Id.* at p. 81). The University's business is the sale of access to education. It "sell[s] the right to participate" in the educational programs and services it delivers. *Randall v. Orange County Council*, 17 Cal.4th 736, 744 (1998). Alternatively, public school districts do not "sell the right to participate" in the basic educational programs and services they deliver. The University is akin to "a secular private school, charging tuition and generally open to school-age children," which the *Brennon B.* court noted "is likely a business establishment for purposes of the Act." *Brennon B.*, *supra*, 57 Cal. App. 5th at

---

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

p. 391. The "attributes and activities" of the University are "the functional equivalent of a classic 'place of public accommodation or amusement.'" *Curran v. Mount Diablo Council of the Boy Scouts*, 17 Cal.4th 670, 697 (1998). It is "classically 'public' in its operation. It opens its [educational] doors to the entire" world. *Isbister*, *supra*, 40 Cal.3d at p. 81.

The Unruh Act, holds that the term business "embraces everything about which one can be employed, and it is often synonymous with 'calling, occupation, or trade, engaged in for the purpose of obtaining a livelihood or gain.'" *Burks v. Poppy Const. Co.* 57 Cal.2d 463, 468 (1962), citing *Mansfield v. Hyde,* 112 Cal.App.2d 133, 137 (1952). "An organization has sufficient businesslike attributes to qualify as a business establishment when it 'appears to have been operating in a capacity that is the functional equivalent of a commercial enterprise.'" *Carter v. City of Los Angeles.* 224 Cal.App.4th 808, 825 (2014).

The University touches the "lives of tens of thousands of k-12 students in California." (https://uci.edu/community/index.php). The University's medical center serves "Orange County and surrounding communities." *Id.* It "partners with numerous local arts, cultural, educational and civic organizations." *Id.*

As such, this Court should find that the University is a business establishment and should deny its motion to dismiss Plaintiff's Unruh Civil Rights cause of action.

### 3.   Negligence

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333 (1998).

The University owed Plaintiff a duty to protect him from Jane Roe2 and failed to take any action to do so. As such the University is responsible for the harm suffered by Plaintiff due to Jane Roe2's actions after he complained of them to the professors. *Regents of University of California v. Superior Court*, 4 Cal. 5th 607, 620 (2018).

Defendant Regents formed a university-student relationship with Plaintiff and

---

owed him a duty to conduct the disciplinary process with due care, to perform an investigation free from bias or conflict, and to ensure proper training to those responsible for investigating and adjudicating the alleged policy violations.  (FAC ¶ 273.)  Instead, Defendant relied on an unqualified, unlicensed, nonprofessional "investigator" and conducted an administrative process that was replete with due process violations and findings unsupported by evidence.  (FAC ¶¶ 51-54; FAC ¶¶ 73-87.)

Plaintiff's negligence claims are not merely a recitation of his Title IX claims. Everyone has a duty to act with reasonable care under the circumstances. *Cabral v. Ralphs Grocery Co.* 51 Cal.4th 764, 771 (2011). It is undeniable that the University and Plaintiff had a special relationship.  *Regents of University of California v. Superior Court*, 4 Cal.5th 607, 620 (2018).  However, no special relationship need exist for a duty to arise. The University owes a duty of care to Plaintiff "just as any business owes to its business invitees." *United States v. Dix*, 491 F.2d 225, 227 (9th Cir. 1974).

The University failed to exercise this duty of care. When advised that Jane Roe and John Roe had lied in their claims against him, the University failed to take the reasonable action of investigating the claims. However, the University went further than this in breaching its duty of reasonable care to Plaintiff. The University negligently kept Plaintiff from attending school and unlawfully deprived him of access to his educational programs and activities. (FAC ¶ 214.)

Therefore, the Court should deny Defendant's request to dismiss Plaintiff's negligence claims.

### E.   PLAINTIFF'S NEGLIGENCE AND UNRUH ACT CLAIMS ARE NOT BARRED BY STATE-LAW SOVEREIGN IMMUNITY

The University removed the case from State Court. (DKT 1.) As such, it waived its claim to sovereign immunity on federal law claims.  See *Walden v. Nevada*, 941 F.3d 350, 353 (9th Cir. 2019).

Defendant wrongly claims that it cannot be liable for its own negligence and its failure to properly supervise and train the employees who have negligently caused

Plaintiff's injuries, including but not limited to the Title IX Officer, Title IX investigator, and the Vice Chancellor. The California Supreme Court has clearly stated that if an employee breaches a duty to a student, resulting in damages to the student, "liability falls on the school district under section 815.2." *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal.4th 861, 865 (2012). As the employer, the University is liable for the harm caused by the negligence of its employees.  See *Woods v. Town of Danville*, 712 F. Supp. 2d 502, 515 (S.D. W. Va. 2010) ("Under West Virginia law, negligent supervision claims must rest upon a showing that [the employer] failed to properly supervise [the employee] and, as a result, [the employee] proximately caused injury to the plaintiffs;"); *Shanks v. Calvin Walker & Doctor's Assocs.*, 116 F. Supp. 2d 311 (D. Conn. 2000) ("A plaintiff may sue for negligent supervision of employees.... Plaintiff must allege that she suffered injury due to the defendant's failure to supervise an employee whom the defendant had a duty to supervise").

In this matter, the University failed to properly hire, train, and supervise the employees involved in this matter, including but not limited to Professor John Roe, the Title IX Investigator, the Title IX Officer, the Vice Chancellor and the individuals who failed to provide Plaintiff with accommodations. As a result, Plaintiff was injured financially, emotionally, reputationally, and educationally. Because these individuals were allegedly acting in the scope of their employment, the University is responsible for the negligent infliction of these damages on Plaintiff pursuant to California Government Code § 815.2.

The University does not have sovereign immunity with regard to claims made under the Unruh Act. The University has pointed to no case or statute providing the University with sovereign immunity from Unruh Act claims. *Brennon B*. does not provide sovereign immunity from such claims but stands only for the proposition that public schools in California are not "business establishments."  *Brennon B. v. Superior Court*, 57 Cal. App. 5th 367, 369 (2020) (Public school districts are not business establishments under the Unruh Civil Rights Act.)

The copyright case cited by Defendant is also inapposite.  See, *BV Eng'g v. Univ. of Cal.,* 858 F.2d 1394, 1395 (9th Cir. 1988) ("we review only the legal question whether the eleventh amendment immunizes the University of California from suit under the Copyright Act of 1976.)

Therefore, this Court should deny Defendant's Motion to Dismiss as the negligence cause of action.

### F.   DEFENDANT DOES NOT DISPUTE THAT TITLE IX CAUSES OF ACTION ARE SUFFICIENTLY PLED.

Defendant does not contest that the Title IX causes of action properly plead facts showing that sex discrimination was a plausible explanation for the university's handling of the disciplinary case against the student, sufficient for his Title IX claim to survive a motion to dismiss. *Doe v. Regents of the Univ. of Cal.*, No. 20-55831, 2022 U.S. App. LEXIS 725 (9th Cir. Jan. 11, 2022);  *Schwake v. Arizona Board of Regents*, 967 F.3d 940, 947 (9th Cir. 2020)  (the relevant inquiry on a motion to dismiss a Title IX claim in this context is whether the alleged facts, if true, raise a plausible inference that the university discriminated against the plaintiff on the basis of sex.)

### G.   LEAVE TO AMEND SHOULD BE PERMITTED

Under Fed Rules Civ. Proc. R. 15(a)(2), "Courts should freely give leave [to amend] where justice requires." If this Court finds that Plaintiff's First Amended Complaint does not plead his causes of action with the required specificity, Plaintiff should be permitted to amend his Complaint to provide the facts as set forth herein.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff, John Doe, respectfully requests this Court deny Defendants' Motion to Dismiss in its entirety.

Dated: February 28, 2022              By:

HATHAWAY PARKER
___/S/ Mark M. Hathaway___
MARK M. HATHAWAY
JENNA E. PARKER
Attorneys for Plaintiff

---

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS